STATE *v.* PERCY L. CLARY ET AL.

October Term, 1910.

Present:  ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 9, 1911.

*Criminal Law—Breach of the Peace—Assault and Battery—Defences—Joint Respondents—Admission of Evidence—Connection with Offence.*

On the joint trial of respondent and co-respondent for breach of the peace by assaulting two others in the attempt to obtain from them co-respondent's illegitimate daughter, a witness was permitted to testify that in the afternoon of the day in the evening of which the assault was committed, at a certain hotel where co-respondent was staying, witness heard co-respondent talking with two men, one of whom the witness knew and designated and the other of whom she did not see, and that co-respondent said to the former that the child was co-respondent's and that she intended to get it, and would give him $5 to get it, and he answered that he would get it without pay.  Witness further testified that about five minutes later she saw that man and respondent together a short distance from the hotel going towards the assaulted person's home, and it also appeared that co-respondent told respondent that afternoon before the assault that she was going to take the child on the street, but was afraid that the persons having charge of it would attack her, to which respondent answered that he wouldn't allow a man to strike a woman if he was present.  *Held,* that the evidence sufficiently tended to show that respondent was the other person present at the hotel at the time referred to by the witness, so as to make the evidence as to co-respondent's conversation there admissible against respondent.

If the respondent was accidentally at the place where one person was about to commit a breach of the peace by assaulting another, respondent had the right in good faith to interfere to prevent such breach of the peace, using so much force as was reasonably necessary, regardless of which of the persons was guilty of the first violence towards the other.

It is always the duty of the court, whether requested or not, to charge fully and correctly on every point material to the decision of the case.

COMPLAINT for breach of the peace.  Plea, not guilty by

each respondent. Joint trial by jury at the April Term, 1910, Essex County, *Waterman*, J., presiding. Verdict not guilty as to respondent Jordan, and guilty as to respondent Clary; and judgment and sentence of respondent Clary thereon. Respondent Clary excepted. The opinion fully states the case.

*Herbert W. Blake* for the respondent.

It was the duty of the court fully and correctly to charge on respondent's theory of the case, which was supported by evidence, that he merely interfered to prevent a breach of the peace. "It being the duty of every citizen to assist in preserving the peace, any private person may arrest without warrant one who commits a breach of the peace in his presence, provided he makes the arrest at the time of the commission of offence." *People* v. *Morehouse*, 6 N. Y. Supp. 763; *Phillips* v. *Trull*, 11 Johnson 486; *Smith* v. *Donnelly*, 66 Ill. 464.

*George L. Hunt*, State's Attorney, for the State.

POWERS, J. These respondents were jointly tried for a breach of the peace. Clary was convicted, Jordan was acquitted. Most of the exceptions are rendered unavailable by Mrs. Jordan's acquittal, but one or two require attention.

It appeared that John LaRoche and his mother, Alvira LaRoche, were walking up Cross St. in the village of Island Pond shortly before seven o'clock on the evening of Sunday, July 11, 1909, having between them a child, whom both were holding by the hand. This child was the illegitimate daughter of the respondent Jordan, and was being cared for by the LaRoches under an arrangement with its father. The trouble, which resulted in this prosecution, arose over the attempt of the respondent Jordan forcibly to obtain the custody of her child while on the street as aforesaid. The evidence for the State tended to show that Clary made an assault on both the LaRoches and that his participation in the attempt to take the child from them was by pre-arrangement with Mrs. Jordan. On the other hand, Clary claimed, and his evidence tended to show, that all

he did on the occasion in question was to seize John LaRoche and hold him to prevent him from assaulting Mrs. Jordan as he was threatening and attempting to do, and that he was there only by accident, and not by pre-arrangement.

Subject to exception, a Mrs. Cavanaugh was allowed to testify that on that Sunday afternoon at the Lakeview Hotel where Mrs. Jordan was staying, she heard the latter talking with two men, one of whom was a man named Knapp, and that she said to Knapp that the child was hers and that she intended to get it, and that she would give him five dollars if he would get it; to which Knapp replied, in substance, that he would get the child without pay. The State's attorney stated to the court that the witness could not see the other of the two men, and she did not attempt to name him. She did, however, testify that about five minutes later she saw Knapp and the respondent Clary together a short distance from the Lakeview, going "towards Mrs. LaRoche's". It also appeared that the respondents had an interview that afternoon and before the trouble, in which Mrs. Jordan told Clary that she was going to take the child on the street, and that she was afraid Mrs. LaRoche or her son would attack her, and that Clary replied that he wouldn't allow a man to strike a woman if he was present. This is all the evidence in the record tending to connect Clary with what Mrs. Jordan said at the Lakeview; but we think it was sufficient to afford a tendency to show that Clary was the other man present when Mrs. Cavanaugh overheard the conversation which she was allowed to relate. There was no error in admitting her testimony.

Clary's claim that he was not at the place of the trouble or participating therein by any pre-arrangement with Mrs. Jordan was sufficiently announced in the opening statement of his counsel. Nothing appears to indicate that he changed attitude on this question during the trial. On the contrary, the record shows that he was insisting on this claim by asserting that there was no evidence of the pre-arrangement claimed by the State. If, as his evidence tended to show, this claim was true and he was there by accident, and John LaRoche was about to commit breach of the peace by an actual assault on Mrs. Jordan, Clary had the right in good faith, to interfere to prevent

such breach of the peace, using so much force as was reasonably necessary to accomplish that result. *Timothy* v. *Simpson*, Cromp. M. & R. 757; *Bayners* v. *Brewster*, 42 E. C. L. 720; *Spicer* v. *People*, 11 Ill. App. 294.

Baron Parke thus states the rule in the case first cited: "For the sake of the preservation of the peace, any individual who sees it broken may restrain the liberty of him whom he sees breaking it so long as his conduct shows that the public peace is likely to be endangered by his acts." It is said in 5 Com. Dig. "Pleader," 3 M. 16, that a defendant may plead *molliter manus* to prevent mischief or to keep the peace. It would be difficult to distinguish this affair as disclosed by the record from the common law "affray" which was defined to be the fighting of two or more persons in a public place to the terror of the King's subjects, and which Blackstone said might "be suppressed by any private person present, who is justifiable in endeavoring to part the combatants, whatever consequences may ensue." 4 Black. (15th Ed.) 145.

In such cases, the peacemaker's justification does not in any degree depend upon which of the contestants was guilty of the first illegal violence; for he justifies not in the right of either of the parties, but in the right of the public. And, as said by Baron Parke in the Timothy case, "if no one could be restrained of his liberty, in cases of mutual conflict, except the party who did the first wrong, and the bystander acted at his peril in this respect, there would be very little chance of the public peace being preserved by the interference of private individuals."

Clary was entitled to an instruction appropriate to the case made by his evidence in this respect. It is always the duty of the court, whether requested or not, to charge fully and correctly upon every point material to a decision of the case, which there is any evidence to sustain. Vt. Dig. 2754. So Clary's rights were in no wise dependent upon the sufficiency of his request.

Since this phase of the defense was not covered by the charge, the exception to the omission must be sustained.

*Reversed and remanded.*