## State of Vermont v. Charles R. Barrett

[266 A.2d 441]

No. 36-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 2, 1970

*James M. Jeffords,* Attorney General, and *William T. Keefe,* Assistant Attorney General, for the State.

*Peter Forbes Langrock,* Middlebury, and *George T. Costes,* St. Albans, for Respondent.

**Barney, J.** The respondent was charged with first degree murder and found guilty by the jury. His appeal raises a number of questions, from an issue relating to the impanelling of the jury, through motions for a change of venue and for a directed verdict, to objections to the charge and to the form of

the verdict. Some of these issues were also raised below in connection with motions for a new trial and for judgment notwithstanding the verdict. In this Court he seeks to have a judgment of not guilty entered with respect to the crimes of murder in the first degree and murder in the second degree, with a remand for a new trial on the remaining homicidal charges.

The victim was a Clifton B. Combs, a person the respondent did not know particularly well. The two came together on a Friday night while both were apparently making the rounds of St. Albans restaurants and bars. Both had been drinking and both may have been involved in altercations with others earlier in the evening, before they met. They were seen together, apparently on friendly terms, a short distance from the alley where the killing occurred. The only available evidence as to what happened comes from a statement given by the respondent. It sets out the tragedy as resulting from a drunken assault on him by the deceased with a knife. The investigation disclosed that the wallet and watch of Combs were taken and later destroyed by the respondent. The autopsy revealed some fifty wounds in the deceased, including sixteen knife wounds in the chest. The weapon was the knife belonging to Combs.

The trial court refused to grant the motion for a change of venue. It made findings, the import of which were that, although the affair was both notorious and brutal, the reporting of the event, extensive as it was, was not inflammatory or denunciatory. Reliance was placed on the competency of counsel to discover prejudice in prospective jurors and prevent their sitting.

■ It is most proper that the trial court, being on the scene, be the tribunal whose judgment and evaluation of the situation is given great weight. Its appraisal of the community temper, as affected by the passage of time from episode to trial, and the nature and measure of the public outcry as it affects the prospects for a fair trial, will, necessarily, have high acceptance here. *State* v. *Truman*, 124 Vt. 285, 289, 204 A.2d 93.

It is well to note, however, that both the respondent and the state have an interest in insuring a fair trial. The right to

petition is given to both of them by 13 V.S.A. § 4631. In these days of easy travel and communication, the advantages of avoiding any claim of a biased jury may far outweigh any immediate practical advantage of keeping the trial within the aroused county or district. The denial of such a motion usually insures that the issue must be relitigated in post-conviction proceedings at least. Nevertheless, particularly in view of the disposition of this appeal, we are not persuaded to find error in the ruling already made on the question of a venue change.

Sixteen stab wounds in the chest do not necessarily suggest self-defense. An evaluation of the evidence from the viewpoint of a trier of fact might well be persuasive that the defense was not proved. But the deadly instrument did belong to the deceased, not the respondent. The statement of the respondent, in evidence, did claim that the altercation was instigated by the deceased, and was converted to the bloody affair it became, by the ignition of the respondent's violent anger at the aggression by the deceased. The respondent requested that self-defense be charged, and objected to the court's failure to make any reference to the defense, either in bar of the charge or in mitigation of its degree. As the language of *Wilson* v. *Prior*, 67 Vt. 508, 514, 32 A. 474, indicates, we are not called upon to consider what chance this evidence had of being believed by the jury when viewed in connection with the testimony of the state. It was a factual issue, and should have been appropriately submitted to the jury.

The manner in which evidence tending to mitigate or exculpate a respondent, charged with a homicide, ought to be received on trial is eloquently phrased by Chief Justice Redfield in *State* v. *McDonnell*, 32 Vt. 491, 538:

> "[I]t is the duty of the court, upon common principles of humanity and justice, first, to pronounce the criminal innocent until he is proved guilty; and, secondly, after he is shown to have committed a homicide, to look for every excuse which may reduce the guilt to the lowest point consistent with the facts proved."

▉ ▉ More than that, it must be kept in mind that the burden is on the state to prove, beyond a reasonable doubt, that the acts of the respondent were not done in self-defense, if evidence raising the issue has appeared in the case. *State*

v. *Wilson,* 113 Vt. 524, 527, 37 A.2d 400. In failing to charge the jury as to the effect of such evidence on the question of the respondent's guilt or innocence, or on the degree of his culpability, if any, the trial court was in error, and a new trial is required. *State* v. *Clary,* 84 Vt. 110, 115, 78 A. 717.

But it should be noted that the very reasons that require that this issue be submitted to the jury also require that the respondent's motions for the direction of verdicts of not guilty on the issue of murder in the first degree and murder in the second degree be denied. If the evidence did raise a factual issue, as it did, the decision is for the jury. *State* v. *Wilson, supra,* 113 Vt. 524, 529.

Although some of the claims of error, such as that relating to jury selection, are not likely to recur on retrial, some matters lend themselves to comment to avoid misunderstanding. The respondent took exception to the verdict for its failure to express the degree of murder of which the respondent was found guilty. Since the response of the jury was "guilty as charged", both as reported by the foreman and as individually polled, and the charge of the indictment, which was for first degree murder, was the charge read to the jury at the outset of the trial, no rational misconstruction of the meaning of the verdict could be made. No error would be predicated on such a verdict, so received, although we would comment that this kind of issue is easily and best resolved by appropriate inquiry by court or clerk before the jury is discharged.

■ ■ The court's charge on voluntary intoxication was challenged. As stated in *State* v. *Stacy,* 104 Vt. 379, 407, 160 A. 257 and *State* v. *Frotten,* 114 Vt. 410, 418, 46 A.2d 921, voluntary intoxication does not excuse or palliate crime, or operate to reduce the degree of homicide where the perpetrator was previously in the requisite condition of mental responsibility. Insofar as it may be a factor in determining the existence of premeditation and malice as arising subsequent to intoxication, the jury is entitled to consider its effect on the respondent's ability to develop "the requisite condition of mental responsibility," and the court should have so charged.

Two or three other contentions that certain language in the charge was subject to misconstruction or misapplication are also matters not likely to arise on a new trial. We mention

their existence, not to say that they amount to any kind of error, but only to comment that the purpose of requiring parties to state, before submission, their objections to the charge as given is to allow an opportunity for immediate correction. *Kinney* v. *Cloutier,* 125 Vt. 109, 112, 211 A.2d 246. There is no more efficacious time for doing so.

*Reversed and remanded for a new trial.*