## State of Vermont v. Charles R. Barrett

[290 A.2d 14]

No. 173-70

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 5, 1972

198

*James M. Jeffords,* Attorney General, and *William T. Keefe,* Assistant Attorney General, for the State.

*Langrock & Sperry,* Middlebury, for Defendant.

**Smith, J.** Charles R. Barrett was indicted for the charge of first degree murder. Trial was by jury at the Franklin County Court on October 28 to November 1, 1969, resulting in a verdict of "guilty as charged." Upon appeal to this Court, the conviction was reversed, and a second trial was held in November, 1970, in the Addison County Court. The defendant was found guilty of murder in the second degree. Post conviction motions were denied, and the case is again on appeal in this Court.

A concise description of much of the factual background of the first case can be found in our earlier decision, *State* v. *Barrett,* 128 Vt. 458, 459, 266 A.2d 441 (1970).

The first claim of error on the part of the defendant is that the trial court erred in denying the defendant's motion for a directed verdict on the charge of first degree and second degree murder at the close of the State's case, and that such claimed error was further compounded by denial of the same motion at the close of all of the evidence and by denial of defendant's post trial motions.

It is not necessary for us to consider the various motions of the defendant for a directed verdict on the charge of first degree murder for the defendant was not convicted of such crime, and error, if any, on the part of the trial court, in view of this circumstance, would be harmless to the defendant.

It is the contention of the defendant that in order for a person to be convicted of second degree murder there must be proof beyond a reasonable doubt that the unlawful killing took place with malice deliberately conceived. *State* v. *McDonnell,* 32 Vt. 491, 544 (1860). Defendant claims that

the facts in the instant case are markedly similar to those in *McDonnell*. However, with this statement we are not in full agreement. In the first place the exceptions of the defendant, in *McDonnell*, were based upon claimed error in the charge of the court, in that the jury was not instructed upon the distinction between manslaughter and murder, and it was for this failure in the instructions of the court that the case was reversed. Secondly, there were numerous eyewitnesses to the homicide in *McDonnell*, with the evidence being that the deceased had received only one thrust or stab from a knife held by the defendant, while the only evidence in the instant case as to the happening of the killing of the deceased, Coombs, came from the testimony of the defendant. Further, both the physical evidence and the testimony in the instant case was that the deceased had received some fifty wounds from a sharp instrument.

The defendant here does not claim error on the part of the lower court in its charge to the jury on the distinction between murder first, murder second and manslaughter. What the defendant does claim is that the factual situation in the instant case did not disclose malice on the part of the defendant toward the deceased, and that in the absence of such showing, the lower court should have directed a verdict in favor of the defendant on second degree murder. Murder in the second degree involves malice, but not premeditation. *State* v. *Bradley*, 64 Vt. 466, 472, 24 A. 1053 (1892).

> " 'Malice, although in its popular sense means hatred, ill will or hostility to another, yet, in its legal sense, it has a very different meaning, and characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; the willful doing of an injurious act without lawful excuse'. Shaw, C.J., in *Com.* v. *York*, 9 Metc. (Mass.) 93, 104, 43 A.D. 373. It is involved in the intentional doing of a wrongful act, in disregard of what one knows to be his duty, to the injury of another." *Giguere, Admr.* v. *Rosselot et al.*, 110 Vt. 173, 184, 3 A.2d 538 (1939).

The only two witnesses to the occurrences that led to the death of Clifton B. Coombs were Coombs and the defendant,

Barrett. Coombs being dead, this left Barrett, the accused killer, as the sole surviving witness. It was Barrett's choice to take the witness stand as a witness in his own behalf and his evidence was the only eyewitness account of the actual killing which was presented to the jury. There was other evidence in the case that both Coombs and Barrett had been drinking in various establishments in St. Albans on the evening of the homicide, but not in each other's company. In fact, the evidence was that the two men were not acquainted. At some time in the early morning hours of May 18, 1968, the two men were seen together, apparently engaged in conversation. But from this point on the only direct evidence of what later occurred is from the testimony of Barrett.

Barrett testified that prior to the time he met Coombs he had been in a fight with another individual, which, the witness described as a "dirty fight". His story is that he first encountered Coombs when Coombs fell against him in the lobby of the St. Albans House. It was the testimony of Barrett that Coombs informed him he had no place to stay and insisted on showing Barrett his empty wallet. His further testimony was that Barrett then asked Coombs if Coombs wanted Barrett to take Coombs to the St. Albans Police Station for lodging, to which Coombs agreed, and they walked away together. While walking down an alley in back of the Police Station, Barrett testified that he had his hand on Coombs' arm to steady him. Then Coombs suddenly broke away from him, turned, and came toward Barrett with a knife in his hand. Barrett stated he started to run away, slipped and fell, and that Coombs came on top of him with the knife in his hand. Barrett then "backhanded" him and felt the knife go into the chest of Coombs.

Barrett testified that from this point on he remembered nothing until he saw Coombs stretched on the ground with the knife in his chest, and realized that he was dead. He took the knife that had been used in the affray, as well as the wrist watch that Coombs was wearing. He broke the wrist band of the watch and threw the several pieces in the tall grass, but kept the watch and placed it in a jewelry box belonging to his wife at their home.

He later attempted to burn the knife, together with the bloodstained clothes that he had been wearing that night, and the wallet of Coombs. Fire failing to destroy the knife, he dismantled it with a chisel and threw the pieces into a brook. After his arrest, he assisted the police in recovering the watch, the pieces of the watch band, as well as the dismantled knife from the brook.

The knife used in the affray was a common type of pocket knife, claimed by the defendant to have been the property of Coombs, and undoubtedly, similar to the type of pocket knife that Coombs was in the habit of carrying in his pocket. However, the State offered evidence by one Harry Reed, with whom Coombs was living, that he found among the personal effects of Coombs a knife of the type used by Coombs, with one blade broken. Such evidence had not been presented at the first trial of the defendant.

The fact that the defendant gave the only direct testimony as to what actually happened at the time Coombs was killed, and that such testimony was necessarily undisputed, still left the credit to be given to his testimony a matter for the determination of the jury. As the lower court correctly charged, the jury had the right to believe all the testimony of any witness, believe it in part and disbelieve it in part, or reject it all together. This jury determination applied as well to the testimony given by the defendant as it did to that of any other witness in the case. No exception was taken by the defendant to the charge.

While the plea of self-defense on the part of the defendant was supported by his own testimony, there was other evidence in the case by which the jury might have found that the State had met its burden to prove, beyond a reasonable doubt, that the acts of the respondent were not done in self-defense. As was stated in *State* v. *Barrett, supra,*

> "Sixteen stab wounds in the chest do not necessarily suggest self-defense."

In fact, the testimony of Dr. Anne Hooper, the pathologist who performed the autopsy on the body of Coombs, was that some fifty wounds were found upon his face and body, in-

cluding the cutting out of an eye, as well as the cutting of the throat from ear to ear which was the actual cause of death. It was her undisputed testimony that many of the chest wounds, in fact, were inflicted upon the body of Coombs after death had occurred. The only wounds on the defendant were scratches on the thumb and index finger of his right hand. In weighing the self-serving testimony of the defendant, the jury also had for its consideration the admitted fact that the defendant had attempted to destroy all evidence of the killing in an effort to avoid detection and arrest.

In the first *State* v. *Barrett,* we reversed and remanded the case for a new trial on the failure of the court to charge the jury as to the effect of evidence of self-defense on the questions of the defendant's guilt or innocence, or on the degree of his culpability. But Justice Barney, speaking for the Court stated:

> "But it should be noted that the very reasons that require this issue (self-defense) be submitted to the jury also require that the respondent's motions for the direction of verdicts of not guilty on the issue of murder in the first degree and murder in the second degree be denied. If the evidence did raise a factual issue, as it did, the decision is for the jury."

In the second trial of the case, although additional evidence was offered by both the defendant and the State, the same factual issue of whether the killing of Coombs by the defendant was done in self-defense was still a factual issue for the determination of the jury. The lower court so charged and no exception was taken to this instruction by the defendant. We find no error in the trial court's denial of the various motions of the defendant for a directed verdict in his favor on the charge of second degree murder.

■ The jury, obviously having rejected the claim and evidence of the defendant that he had killed Coombs in self-defense, was at liberty to imply malice on the part of the defendant from the extreme character of the assault which resulted in the death. *People* v. *Winters,* 29 Ill.2d 74, 193 N.E.2d 809 (1963).

The second claim of error on the part of the defendant is that the lower court, in ruling on the defendant's motion for a directed verdict of not guilty on the charge of first degree murder and second degree murder, denied such motion by reason of the holding of this Court in *State* v. *Barrett, supra,* rather than using its own discretion. What the defendant seems to be saying is that in the first *Barrett* case, we referred to the fact that "the evidence did raise a factual issue", and that in the second trial, principally because the defendant took the stand in his own defense, which he did not do in the first trial, the ruling in the first *Barrett* case was not binding upon the lower court at the second trial.

But the defendant does admit that if, at the second trial, "the evidence would raise a factual issue" as to the possibility of guilt relating to first degree murder and second degree murder, then the matter would be properly submitted to the jury. As we have already seen, the question of whether the defendant acted in self-defense in killing Coombs was still a factual issue for the jury, despite the fact that some new evidence had been brought into the case since the first trial. Indeed, the lower court submitted the issue of self-defense to the jury as a question to be decided by it, and no objection to such charge was made by the defendant. This was a factual issue as to the possibility of guilt relating to first degree and second degree murder and the lower court properly followed the law as set forth in *State* v. *Barrett, supra,* under the circumstances.

*Judgment affirmed.*