## State of Vermont v. Steven M. Jaramillo

[436 A.2d 757]

No. 119-80

Present: **Barney, C.J., Billings, Hill and Underwood, JJ., and Daley, J. (Ret.), Specially Assigned**

Opinion Filed September 1, 1981

*Mark J. Keller,* Chittenden County State's Attorney, *James R. Crucitti,* Deputy State's Attorney, and *Jeffrey Cohen* and *Arthur Arnold, III,* Law Clerks (On the Brief), Burlington, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Ellen Cooghan,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Billings, J.** At about 4:00 in the morning on May 31, 1979, the Burlington Police Department received a report that a number of cars were being vandalized. An officer was dispatched, and when he arrived in the area he saw a number of cars with smashed windshields. He then saw a car double parked in the wrong lane of travel. When the double parked car began to drive away the officer saw pieces of glass fall to the ground and saw that some of the windows of the other car were broken. The officer chased the car. When it stopped he saw several objects thrown from the rear window on the passenger side. The officer later found a pair of pliers in that area. Three men then got out of the car from the driver's side, with the defendant the last to leave. The defendant had blood on his hand. He tried to kick the officer and run away, but was arrested. An inspection of the car revealed broken glass in the rear seat on the passenger side, a wheel wrench

under the front seat on the same side, and another wheel wrench under the rear seat on the same side.

At trial, the driver of the car testified that the defendant, as well as the others, told her to slow down as they passed some of the cars whose windshields were smashed. She also testified that the defendant was seated in the rear on the passenger side throughout the episode, and that he was hanging out of that window at least part of the time. The defendant was convicted after a jury trial, and now appeals.

The defendant's first argument is that the theory of liability relied on by the prosecution was not fairly charged by the information. The information alleged that the defendant intentionally caused damage to fourteen cars. The court instructed the jury that it could find the defendant guilty if he aided in the commission of the offense charged. The defendant argues that one charged with being a principal may not be convicted on evidence showing that he was merely an accessory.

■ 13 V.S.A. § 3 provides: "A person who aids in the commission of a felony shall be punished as a principal." Similar statutes in other jurisdictions have consistently been held to permit the conviction of a defendant, charged as a principal, who has been shown to have done no more than aid in the commission of the crime. See, e.g., *United States* v. *Longoria,* 569 F.2d 422 (5th Cir. 1978); *Bays* v. *State,* 240 Ind. 37, 159 N.E.2d 393 (1959); *State* v. *Smolin,* 221 Kan. 149, 557 P.2d 1241 (1976); *State* v. *Johnson,* 272 N.W.2d 304 (S.D. 1978). See also *Standefer* v. *United States,* 447 U.S. 10 (1980). We concur, and find the defendant's argument without merit.

■ The defendant also argues that the evidence presented at trial was insufficient to support the conviction even on the theory that he aided in the commission of the crime. In considering the claim we must view the evidence in the light most favorable to the State, *State* v. *Prime,* 137 Vt. 340, 403 A.2d 270 (1979), and we must affirm the judgment unless we find there was no credible evidence presented which would justify a verdict of guilty. *State* v. *Daigle,* 136 Vt. 178, 385 A.2d 1115 (1978). The defendant admitted that he was in the car during a period of one-half hour to forty-five minutes

while one or more of the occupants of the car smashed the windows of fourteen cars. The driver of the car testified that the defendant was in the right rear seat during this time. The arresting officer testified that there was broken glass on this seat. Two wheel wrenches were found near this seat. One of these contained small particles of glass. The officer testified that when the defendant was arrested he had blood on his hand, and that he tried to escape. This evidence of flight could be considered by the jury. *State* v. *Unwin*, 139 Vt. 186, 424 A.2d 251 (1980). The driver testified that at one point, just before one of the windows was smashed, the defendant told her to slow down. The jury could have concluded from this statement that the defendant was a knowing participant in the crime charged. Taking the evidence in the light most favorable to the State and excluding modifying evidence, *State* v. *Prime, supra,* we believe the jury was justified in finding the defendant guilty beyond a reasonable doubt.

The defendant's final argument concerns the court's charge to the jury. During the charge the court gave the following instructions.

> [I]t is the duty of the State in criminal trials to produce and use all witnesses within reach of process of whatever character whose testimony will shed light on the transaction, whether it makes for or against the person accused.

The defendant argues that this instruction improperly enhanced the credibility of the prosecution's chief witness, Patty Stewart, who was the driver of the car.

In *State* v. *St. Amour*, 139 Vt. 99, 422 A.2d 937 (1980), this Court held that an instruction such as this one may be given to the jury only when the State has tried to impeach its own witness, and then only to explain why the State is permitted to do so. *Id.* at 102–03, 422 A.2d at 939. Even in such a situation the value of this charge is questionable. In the case at hand, the State never sought to impeach any of its witnesses, and this instruction should not have been given. However, when the charge to the jury is considered as a whole, *State* v. *Girouard*, 135 Vt. 123, 373 A.2d 836

(1977), this error does not require reversal. After the portion of the charge quoted above, the court went on to say:

> Now one of the State's witnesses, Patty Stewart, is what the law terms an accomplice. . . . [Y]ou are to scrutinize Patty Stewart's testimony with extreme caution. You should keep in mind that the taint of criminality admitted by her in the commission of this crime. Further, you should consider her possible self-interest in her testimony, if any, and judge her credibility thereby. Finally, you should consider whether the State has given you other evidence to corroborate her testimony.

It is clear that the charge, taken as a whole, did not improperly enhance the credibility of this witness.

*Affirmed.*