## State of Vermont v. Seth W. Camley

[438 A.2d 1131]

No. 149-80

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed December 3, 1981

*John J. Easton, Jr.,* Attorney General, and *Susan R. Harritt* and *Edwin L. Hobson, Jr.,* Assistant Attorneys General, Montpelier, for Plaintiff.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Jacqueline Majoros,* Law Clerk (On the Brief), Montpelier, and *Welch and Graham,* White River Junction, for Defendant.

**Barney, C.J.** This case is on appeal from the Orange Superior Court where the defendant was tried on two counts of murder and convicted of second degree murder in the killing of his wife, Earlene Camley, and of first degree murder in the killing of her lover, Clifford Manosh.

At trial the defendant pled not guilty to both charges and took the stand in his own behalf. Although he admitted causing the death of both victims by shooting them, he never testified to his state of mind at the time of either incident, and never admitted that his conduct was unlawful.

Defense counsel argued throughout the trial that the killing of Mrs. Camley had been provoked and done in the heat of passion, which would not have excused the act, but could have mitigated the offense and reduced it to manslaughter. He maintained that the killing of Manosh had been done in self-defense, and was thus, under 13 V.S.A. § 2305, justifiable homicide for which he should be held guiltless.

On appeal the defendant raises a number of issues, most of which involve the judge's charge to the jury. The charge itself ran for thirty-two pages in the transcript. At trial it was reduced to writing and distributed to the jurors, who were invited to read along as the judge delivered it orally, and to take it into the jury room for further consideration.

Error is claimed in those portions of the charge describing the possible verdicts which could be rendered on each count of the information, the defendant's right of self-defense, permissible inferences from the fact of the shootings, and the general purposes of the prosecution. The defendant also maintains that, taken as a whole, the instructions were confusing, misleading, and emphasized the prosecution's theory of the case. While we acknowledge the difficulty facing a trial judge in a case of this complexity, we are compelled to agree and reverse and remand for new trial.

The trial judge instructed the jury twice on the possible verdicts it could render as to each of the killings, once near the beginning of the charge and again in summary, at the conclusion. The language of the two sections was nearly identical and read as follows from the summary:

> Let me sum up, again, briefly, the issues which you must decide in this case, having firmly in mind in each instance that on each issue the burden rests upon the State to establish its contention beyond a reasonable doubt. One, was Clifford Manosh killed by Seth Camley while acting in justifiable self defense; if you find that such was the case, then your verdict as to this incident must be not guilty. If you find, however, that the defendant committed the killing of Clifford Manosh while not acting in justifiable self defense and you are satisfied of this beyond a reasonable doubt, you must then determine whether the killing was done in the heat of passion or by the honestly mistaken use of excessive force so as to make it manslaughter, or with malice so as to make the crime murder rather than manslaughter, and if murder, whether the act was also willful, deliberate and premeditated so as to make the offense first degree murder rather than second degree. Third, with respect to Earlene Camley, you must determine whether that act was done in the heat of passion so as to make it manslaughter, or with malice, which would make the crime murder, and if murder, whether the act was also willful, deliberate and premeditated so as to make the crime first degree murder rather than second.

> You thus have a choice of four verdicts which you can reach with respect to the Clifford Manosh killing. These

are one, not guilty; two, guilty of manslaughter; three, guilty of murder in the second degree; or, four, guilty of murder in the first degree. With respect to the Earlene Camley killing, you have a choice of three possible verdicts, one, guilty of manslaughter; two, guilty or [sic] murder in the second degree; or, three, guilty of murder in the first degree.

Transcript, vol. XII, 30–31.

The defendant claims, for the first time on appeal, that the trial court erred in failing to charge the jury that it could find him not guilty of slaying his wife, and by charging that he could only be found not guilty of slaying Manosh if the jury found that he acted in self-defense. The essence of his argument is that the charge, as given, constituted an impermissible comment on the evidence tantamount to a directed verdict, and violated his constitutional right to a fair trial by jury.

The paramount importance of a criminal defendant's right to a fair trial by jury has been repeatedly recognized by this Court. *State* v. *Prime*, 137 Vt. 340, 342, 403 A.2d 270, 272 (1979); *State* v. *Woodard*, 134 Vt. 154, 158, 353 A.2d 321, 323 (1976); *State* v. *Barrett*, 130 Vt. 197, 201, 290 A.2d 14, 16 (1972). In *Woodard* we declared no right more fundamental, and affirmed the Court's duty, when confronted with a record disclosing even a possible infringement of the right, to set aside a guilty verdict rendered below.

Implicit in a fair trial is the presumption of innocence. In Vermont the presumption is, by statute, itself a piece of evidence, to be considered by the jury in the defendant's favor in arriving at their verdict. 13 V.S.A. § 6502. Except for facts which a defendant himself judicially admits, the State's evidence must always be weighed against the presumption and any other evidence advanced by the defendant in his favor before the jury can return a general verdict on the merits.

A defendant's judicial admission of the facts of a crime does not necessarily represent an admission that he acted criminally or culpably. This remains a question for the trier of fact, absent a plea of guilty pursuant to V.R.Cr.P. 11. Even a confession does not obviate the necessity of establish-

ing the material and legal existence of a crime, and the defendant remains entitled to a charge on the possibility of a general not guilty verdict based on the jury's disbelief of the prosecution's case. The jury has the right to believe all, part, or none of the testimony of any witness, and this rule applies to the defendant as well as any other witness. *Barrett, supra*, 130 Vt. at 201, 290 A.2d at 16.

Nor can the concessions of defense counsel, or the strategy he employs at trial, be construed as a waiver of the right to an unbiased jury. That right is a personal one and may be waived only by the defendant, and only upon a showing that it was undertaken in a knowing and intelligent manner. *State* v. *Prime, supra*, 137 Vt. at 343, 403 A.2d at 272 (citing *Fay* v. *Noia*, 372 U.S. 391, 439 (1963)). When a plea of not guilty is entered, defense counsel's admission at trial that defendant killed the victims does not alter the duty of the court to instruct the jury that it may find the defendant not guilty.

It is well settled that, at the very least, a judge's instructions may not direct a verdict of guilty no matter how overwhelming or conclusive the evidence. *United Brotherhood of Carpenters* v. *United States*, 330 U.S. 395, 408 (1947). It is an essential feature of the right to trial by jury, that no jury should be compelled to find anything but a general verdict in criminal cases, and removal of this safeguard would violate its design and destroy its spirit. *People* v. *Stockwell*, 52 Mich. App. 394, 396, 217 N.W.2d 413, 415 (1974).

Our Vermont law further restrains a judge from commenting on the evidence in a way which gives undue prominence to any fact, claim or circumstance, *Morse* v. *Ward*, 102 Vt. 433, 436, 150 A. 132, 133 (1980). This is because a judge's lightest word or intimation is received by a jury with great deference, and may prove controlling. *Quercia* v. *United States*, 289 U.S. 466, 470 (1933).

The question in this case thus becomes whether the trial judge's failure to expressly mention the possibility of a general verdict of not guilty in his charge to the jury constitutes an impermissible comment. Because the influence of a judge on a jury is so profound, we believe that it does, when

the charge, as here, includes careful and apparently inclusive instruction in possible verdicts which could be rendered.

 In his instructions to the jury with regard to the killing of Earlene Camley, the judge barred the jury from returning a general verdict of not guilty by limiting the issues which the jury could decide to whether the act was done in the heat of passion, so as to make it manslaughter, with malice, to make it murder, or willfully, deliberately, and with premeditation, to elevate it to murder in the first degree. This limitation was emphasized by his listing, at the end of each section, three possible verdicts which could be rendered, all of which required a finding of guilty. This was reversible error.

 The trial judge did list four possible verdicts on the charge of killing Clifford Manosh, one of which was a verdict of not guilty. However, here the not guilty option was linked to the condition that the jury find Camley was acting in self-defense. Failure to list a general not guilty verdict, along with the others, also requires reversal.

 The responsibility for avoiding situations that might impair the ability of a jury to discharge its duty rests with the trial judge. Here the jury was told that the defendant was presumed innocent until proven guilty beyond a reasonable doubt, but then was thwarted from returning a general verdict of not guilty. While it may appear absurd to suggest that jurors can be unaware that a not guilty verdict is a possible verdict, there is no way of knowing what effect a trial judge's omissions have upon them. The erroneous instructions may have placed them in such a quandary that they were unsure what their obligation to the defendant was. *State v. Hutchinson*, 287 Md. 198, 208, 411 A.2d 1035, 1041 (1980).

 The defendant's failure to raise this issue below does not preclude our attention to it here. Where an alleged error strikes at fundamental rights this Court will consider the matter for the first time on appeal. *State v. Welch*, 136 Vt. 442, 445, 394 A.2d 1115, 1116 (1978). There is no evidence in this case that the court's noncompliance with constitutional requirements resulted from anything but inadvertence, perhaps

occasioned, but not excused, by the trial strategy of defense counsel.

We will not consider the defendant's claim that the court's instruction on his right to self-defense was deficient, for we are confident that upon retrial the requests to charge submitted by both parties in this area of law will differ substantially enough to render immaterial any comment we might make now on the issue as it is presently before us.

Nor do we find reason to measure the charge on the State's duty and relationship to witnesses against due process standards. The State claims that no exception was taken on this point below, and in any case the issue has been recently determined, and the duty stated, in the following language:

> [T]he prosecutor has full discretion to determine which of the witnesses he will put on the stand. He is only bound to produce those witnesses who, in his opinion, may lead to the truth in the case. . . . There is no possible basis to read into that proposition any notion that the State was required to or did call all possible witnesses.

*State* v. *St. Amour,* 139 Vt. 99, 103, 422 A.2d 937, 939–40 (1980).

However well-taken some of the defendant's other exceptions may be, it being improbable that any of those remaining claims of error will recur in the same form or be subject to the same exceptions on retrial, we decline any comment on them.

*Reversed and remanded for new trial.*