# State of Vermont v. Benjamin Gates

[451 A.2d 1084]

No. 341-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed August 31, 1982

Dissenting Opinion Filed October 5, 1982

564

*John J. Easton, Jr.,* Attorney General, *James R. Crucitti* and *Marilyn Skoglund,* Assistant Attorneys General, Montpelier, and *Harold E. Eaton,* Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

Hill, J. The defendant appeals his conviction by a jury of assault and robbery. We reverse.

## I.

In the late evening of March 13 or the early morning of March 14, 1980, there was an assault and robbery outside of a Burlington bar. At trial, only one witness, a fourteen-year-old juvenile, identified the defendant as one of the assailants. This juvenile had been an accomplice in the robbery, and testified under a grant of immunity. The defense attempted to impeach her credibility and testimony through extensive cross-examination. On the day of the robbery, the juvenile had ingested twelve sixteen-ounce bottles of beer, seven rum and cokes, two Black Russians, cocaine, speed, and marijuana. The witness did not get along with the defendant, and had bad feelings about black people "in a sex manner." (The defendant is black.) The witness has a long history of delinquency, including heavy drug and alcohol abuse, robbery, and shoplifting. The defense also challenged the consistency and accuracy of the juvenile's testimony.

The defendant's sole witness offered an alibi for the defendant. This witness testified that the defendant spent the night of the crime at her home. The prosecution vigorously attacked her credibility and the consistency of her testimony. She admitted that she was in love with the defendant, and would do almost anything to help him with the case. She also stated that she spent the recesses and breaks at the trial with the defendant. The prosecution persistently questioned the witness on inconsistencies between her testimony and pretrial deposition, which was given ten days before the trial.

In sum, the case boiled down to one issue: who did the jury believe. They could accept the testimony of the only witness

to identify the defendant as the attacker, and convict the defendant. Or, they could accept the testimony of the alibi witness and acquit. The decisive factor in this choice would be their evaluation of the impeached credibility and stories of both witnesses.

On closing argument, the prosecutors made still another sally on the alibi witness:

Prosecutor: Tuesday was the 11th [of March]. The assault was on the 13th. [The alibi witness] told you that she remembers [the defendant] slept [at her house] the first time on Tuesday. But then she told [defense counsel] in response to his questions that when she was deposed on that point, she wasn't sure whether Tuesday was the first night they spent together. *Of course, now that she has testified, now that she has spent all of the recesses and all of the breaks in the trial with Mr. Gates, she's sure—*

Defense
Attorney: Objection, your Honor. I object to that. There is no indication in cross-examination that—or any fabrication of testimony. She did state she was with Mr. Gates.

The Court: I think the Jury can draw the inferences they wish as to the conversàtions. She indicated what they talked about, and the fact that they spent time together can be commented on. It is in evidence.

Prosecutor: I'm asking you to consider that. You draw your own conclusions. *Just as the Court has said, draw your own inferences from that.* That's in evidence, that they spent all of this time together during the trial, during the breaks, that she has been with him. He has been sitting here throughout the whole trial listening to every word from every witness, listening to every piece of evidence. And she testified that she lives with him and would do anything ex-

cept—with that one exception—something that would endanger those people, for him. Draw your own conclusions from that.

(Tr. G—167 to 168) (emphasis added).

The defendant claims that this argument raised improper inferences and thereby denied him his right to a fair trial. He also challenges the propriety of the following instruction, to which he made a timely objection.

Now, the State occupies a different position to a witness it calls than does a private party. It is the duty of the State to produce and use all witnesses within reach of subpoena of whatever character, who's testimony will shed light upon the case, leaving it for the Jury to weigh the evidence and to decide to what extent it is credible. The public, at who's interest the prosecution is carried forward, has as much interest in establishing the innocence of the defendant, if he be innocent, as his guilt, if he be guilty. This is not to say the State's Attorney must call each and every witness who may have an account to relate as to a particular occurrence. The State's Attorney is vested with some degree of discretion in determining what course is both just and best, adapted to minimize undue or unnecessary prolongation of the trial.

(Tr. G—205).

We begin with the claim on the argument of the prosecution.

## II.

 The boundaries of propriety in closing argument are well established in Vermont. "[C]ounsel should confine argument to the evidence of the case and inferences properly drawn from it, and must avoid appealing to the prejudice of the jury." *State* v. *Lapham*, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977). Improper closing argument, standing alone, is insufficient to overturn a conviction. "[P]rejudice must affirmatively appear." *Id.* at 407, 377 A.2d at 257. See *State* v. *Blakeney*, 137 Vt. 495, 504, 408 A.2d 636, 642 (1979). Thus, to warrant reversal, the appellant must establish that the

prosecutor's closing argument was not only improper, but also that it impaired the defendant's right to a fair trial.

We agree with the defendant that the prosecutor's argument strayed from the evidence and "inferences properly drawn from it." *State* v. *Lapham, supra,* 135 Vt. at 406, 377 A.2d at 257. The credibility of the defendant's alibi witness was certainly fair game for the prosecution. There is no doubt that the prosecutor had every right to challenge the consistency of the witness' story, and the impact of her involvement with the defendant on her testimony. Yet, the evidence did not give the prosecutor license to suggest two other damaging inferences which her closing argument plainly implied.

The first impermissible inference raised by the prosecutor's argument concerned the witness herself. The argument went beyond a general attack on veracity, consistency, or bias. The argument called on the jury to infer that on specific occasions, i.e., the trial breaks, the witness had relearned her story with the help of the defendant. There was not a shred of evidence to support this inference. Although the prosecutor extensively cross-examined the witness, she never asked whether the defendant had coached the production of an alibi. Nor did she inquire as to what the defendant and the witness talked about during the trial breaks. Rather, the prosecutor chose to suggest this damaging innuendo on closing argument where it could not be rebutted by any evidentiary offer. By presenting this inference to the jury, the prosecutor buttressed a general attack on the witness with a specific allegation of misconduct. This inference about the witness, however, has no support in the record.

Second, and even more important, is the inference raised by the prosecutor's argument about the defendant himself. Even were we to allow an unsupported attack on the witness, we could not permit the added thrust at the defendant. The plain inference of the argument was that not only had the witness lied, but that the defendant himself had procured the dishonesty. The attack on the witness' credibility cannot be stretched to support an inference about the defendant's conduct. Yet, the prosecutor invited the jury to

infer that the defendant had suborned perjury, see 13 V.S.A. § 2902; *State* v. *Bissell*, 106 Vt. 80, 90, 170 A. 102, 106 (1934), or at least tampered with a witness. Whatever the jury's opinion of the alibi witness, an inference of misconduct by the defendant, unrelated to the charged offense, was an added strike against him. By raising the unsupported inference, the argument exceeded the bounds of the evidence. Accord, *United States* v. *Rios*, 611 F.2d 1335, 1341–43 (10th Cir. 1979); *United States* v. *Hayward*, 420 F.2d 142, 146–47 (D.C. Cir. 1969); *Hall* v. *United States*, 419 F.2d 582, 585 (5th Cir. 1969).

On appeal, the State does not contend that either of the above inferences are based on the case's evidence, or would be appropriate. Instead, the State contends that the argument only attacked the consistency and veracity of the witness. As Justice Peck put it, this "is a paper-thin effort to disguise the language [of the closing argument]." *State* v. *Moran*, 141 Vt. 10, 20, 444 A.2d 879, 884 (1982). The prosecutor herself admitted that her argument raised improper inferences during a bench conference following the defendant's objection to her argument:

| Defense Attorney: | Your Honor, in the event you didn't grant a motion for mistrial, I would ask you to instruct the Jury that there is no evidence whatsoever in this case that there was any fabrication made during any of those conferences. There is no such evidence in the case. |
| Prosecutor: | I didn't suggest that there was. |
| The Court: | She didn't say there was. |
| Defense Attorney: | She was suggesting that there was. She was clearly suggesting it. |
| Prosecutor: | *I said they can infer that and they can.* |

(Tr. 6—1697) (emphasis added).

■ Furthermore, if this admission was not enough, "doubt as to the appropriateness of the prosecutor's lan-

guage . . . must be resolved in favor of the defendant." *State v. Moran, supra,* 141 Vt. at 20, 444 A.2d at 884. Consequently, we conclude that the prosecutor's argument exceeded the bounds of the evidence. See *State v. Lapham, supra,* 135 Vt. at 406, 377 A.2d at 257.

We also conclude that the defendant has established that this improper argument prejudiced his right to a fair trial. First, the credibility and accuracy of two witnesses, the alibi witness and the witness who identified the defendant, were the critical issues before the jury. The improper attack on the alibi witness cannot be discounted, because it went to the decisive issue before the jury. Furthermore, the specious inferences about the defendant gave the jury a collateral ground for convicting him. See *United States v. Hayward, supra,* 420 F.2d at 146–47; *Hall v. United States, supra,* 419 F.2d at 585. This was not a case where the evidence of guilt was overwhelming, or the improper argument dealt with a mere side issue. Rather, the improper argument went to the heart of a close case. See *United States v. Rios, supra,* 611 F.2d at 1342–43. Thus, we conclude that the prosecutor's closing argument requires reversal of the conviction.

## III.

We next turn to the defendant's claim that the instructions on the relationship of the State to its witnesses and its interest in vindicating the innocent prejudiced the defendant's right to a fair trial. Various charges on these topics have weaved a serpentine path through our recent decisions. In *State v. St. Amour,* 139 Vt. 99, 102–03, 422 A.2d 937, 939 (1980), we held that the trial court's charge was proper because it

> explains why the prosecutor may cross-examine his own witness. We trust that, in the future, the lower courts will explain the purpose of this jury charge when giving it to the jury, and will restrict its use only to those cases in which the state of the evidence demonstrates its necessity.

Then, in *State v. Jaramillo,* 140 Vt. 206, 436 A.2d 757 (1981), we reiterated *St. Amour's* position that a charge on

the State's relationship to its witnesses "may be given to the jury only when the State has tried to impeach its own witness, and then only to explain why the State is permitted to do so." *Id.* at 209, 436 A.2d at 759. We went on to criticize such a charge: "Even in such a situation the value of this charge is questionable." *Id.* Yet, in *Jaramillo* itself, and in a subsequent case, *State* v. *Sturgeon,* 140 Vt. 240, 436 A.2d 777 (1981), we did not reverse because the defendant failed to demonstrate any prejudice. *Id.* at 246, 436 A.2d at 781; *State* v. *Jaramillo, supra,* 140 Vt. at 210, 436 A.2d at 759. Next, in dicta in *State* v. *Camley,* 140 Vt. 483, 491, 438 A.2d 1131, 1135 (1981), we declined to evaluate the charge in that case against due process standards, but noted that *St. Amour* had approved prosecutorial discretion in calling witnesses. Finally, in *State* v. *Billado,* 141 Vt. 175, 188, 446 A.2d 778, 786 (1982), we again disapproved the charge, noting that although the defendant had not objected to the charge in that case, "[w]hen properly objected to it may be grounds for reversal."

■ Although the charges have varied in these cases, we can glean two salient principles from our precedents. First, a charge on the State's relationship to its witnesses is appropriate, if ever, only to explain the prosecution's impeachment of its own witness. Second, if the trial court erroneously issues an instruction on this issue, reversal will result if the charge prejudiced the defendant. We conclude that the charge was inappropriate under the facts of this case, and sufficiently prejudicial to warrant reversal.

The State did not impeach any of its witnesses at trial. To the contrary, the major focus of the prosecution's case was the bolstering and rehabilitation of its sole witness to identify the defendant as the assailant. Thus, the instruction was erroneous under the facts of this case. See *State* v. *Jaramillo, supra,* 140 Vt. at 209, 436 A.2d at 759; *State* v. *St. Amour, supra,* 139 Vt. at 102–03, 422 A.2d at 939. Moreover, precisely because the prosecution rehabilitated rather than impeached its witness, the instruction was prejudicial. We reiterate, the critical factor in this case was which witness would the jury believe. Two witnesses gave diametrically opposed versions of the defendant's whereabouts at the time of

the crime. The prosecutor offered the witness who incriminated the defendant; she did not call the exculpatory witness. The instruction on the State's duty to present all witnesses "who's testimony will shed light upon the case," placed a judicial imprimatur on the prosecution's choice of witnesses, and cast a concomitant shadow on the defense witness.

This bias was not cured. Although other elements of the charge admonished the jury to avoid speculation about absent witnesses and to independently evaluate credibility, nowhere in the charge did the court dispel the presumption of credibility which its instruction on the prosecution's duty conferred on the State's principal witness. "[A] judge's lightest word or intimation is received by a jury with great deference, and may prove controlling." *State* v. *Camley, supra,* 140 Vt. at 489, 438 A.2d at 1134. Thus, we cannot conclude that the instruction, "taken as a whole and not piecemeal, breathe[d] the true spirit of the law." *State* v. *Gokey,* 136 Vt. 33, 36, 383 A.2d 601, 602 (1978). Given the importance of the competing witnesses' credibility to this case, the instruction could only have misled the jury by placing the weight of the trial court behind the prosecution's chief witness. It therefore prejudiced the defendant's right to a fair trial.

## IV.

For the sixth time in less than two years, this Court has confronted a challenge to the propriety of instructing jurors on the state's attorney's duty to call witnesses. In this case, we have for the first time held that the instruction warranted reversal. Our experience with this and other similar instructions now leads us to conclude that such instructions should not be given in the future in Vermont criminal trials. Moreover, we cannot permit instructions on the State's nonpartisan interest in vindicating the innocent. There are three major problems with such charges.

First, we note that the object of the State's witnesses instruction—to inform the jury why the prosecution may impeach its witnesses—is ill-served by the instruction. In appropriate cases, jurors may infer that the prosecution can im-

peach its witnesses from an instruction on the State's duty to call all witnesses. Yet, since the instruction does not explicitly address that point, jurors still may not understand that the prosecutor is allowed to impeach his own witnesses despite the instruction. Thus, the instruction does not even guide jurors on the sole point upon which it is relevant.

Second, an instruction that focuses on the prosecution's impeachment rights incorrectly implies a difference between the prosecution and the defense in regards to the availability of friendly witnesses and the power to impeach one's own witness. No such difference exists. The United States Constitution guarantees defendants the right to call, cross-examine, and impeach hostile witnesses. See *Chambers* v. *Mississippi*, 410 U.S. 284, 295–98 (1973). See also 12 V.S.A. § 1642 (conferring more limited right to impeach one's own witness). Furthermore, the *Chambers* court took dead aim on the dubious distinction between prosecution and defense witnesses which is embraced in many trial court instructions: "[I]n modern criminal trials, defendants are rarely able to select their witnesses: they must take them where they find them." *Chambers* v. *Mississippi, supra*, 410 U.S. at 296. Contrary to the injunction of the instruction, in this and many other cases the defense is just as likely as the prosecution to call and impeach hostile witnesses.

Third, and most important, there is always the danger that a jury will interpret an instruction on the prosecution's duty to call informative witnesses and vindicate the innocent to mean that only the witnesses called by the prosecution "shed light on the case," and that the state's attorney would not be prosecuting the defendant unless he was guilty. Reality is far different; prosecutors do make mistakes. Innocent people are sometimes prosecuted, and enlightening witnesses are sometimes not called by the State. Indeed, guarding against those mistakes is the very purpose of an adversarial trial. Consequently, although this instruction accurately reports the prosecutor's legal duty, its impact on the jury may well be misleading. "[I]nstructions . . . should never be confusing . . . ." *State* v. *Derouchie*, 140 Vt. 437, 445, 440 A.2d 146, 150 (1981). Such confusion can only harm the defendant's right to an impartial jury. Like other instructions which accurately state the law but mislead the jury, they should not

be given. See *State* v. *Smith,* 136 Vt. 520, 526, 396 A.2d 126, 129 (1978); *State* v. *Goyet,* 120 Vt. 12, 53, 132 A.2d 623, 649 (1957).

■ Till now, we have criticized, but not prohibited, the charge. Numerous versions of the quoted charge have been used by many judges. It is now apparent that our criticisms have not dissuaded the trial courts from using the charge. After reflection, we conclude that a charge on the prosecutor's duty to call witnesses and vindicate the innocent serves no good purpose, and can only mislead the jury. Thus, we hold that trial courts may not in the future instruct juries on the State's duty to produce all witnesses, or the prosecution's interest in vindicating the innocent. If the defense makes a timely objection to such an instruction, failure by the court to correct the error will in the future mandate reversal. To the extent that *State* v. *St. Amour, supra,* is inconsistent with this holding, we overrule that decision.

■ We emphasize that this is a narrow holding. We do not wish to interfere with the trial courts' fulfillment of their duty "to charge fully and correctly upon each point indicated by the evidence, [which is] material to a decision of the case . . . ." *State* v. *Gokey, supra,* 136 Vt. at 36, 383 A.2d at 602. If either party impeaches its own witnesses, an instruction on the party's discretion in this regard may be appropriate. Similarly, it may prove proper to instruct jurors that neither party vouches for its witnesses. The facts of each case will continue to determine what instructions are necessary for the guidance of the jury.

*Reversed and remanded for a new trial.*

**Underwood, J.,** dissenting. I agree with the majority that *State* v. *Lapham,* 135 Vt. 393, 406, 377 A.2d 249, 257 (1977), stands for the proposition that a state's attorney should refrain in his final argument from appealing to a jury's prejudice, and should confine his or her argument to the evidence introduced and the inferences that may be properly drawn from it. However, I cannot agree with their placing such great reliance on the *Lapham* case to support their position

for reversal of the defendant's conviction in this case, when there is little similarity between the two cases.

In *Lapham* the defendant had entered a plea of not guilty by reason of insanity to a first degree murder charge. In his final argument the assistant attorney general stated, in part: "Now by entering this plea, ladies and gentlemen, I suggest to you that [the defendant] is embarked upon what I refer [red] to earlier in this case as a desperate effort to escape justice." *Id.* at 406 n.2, 377 A.2d at 257 n.2. This Court held that the State's argument constituted error. We characterized it as a studied purpose to arouse the prejudice of the jury, and reversed defendant's conviction. *Id.* at 407, 377 A.2d at 257.

The *Lapham* case is a far cry from the one at hand. In the instant case the state's attorney asked the jury to draw their own inference and conclusion as to the credibility of the defendant's alibi witness from the fact that she had testified she was enamoured of the defendant, planned to marry him, and would do almost anything within reason to help him. The state's attorney called their attention to the evidence that this witness and the defendant were living together, that they were together every day during the trial, and conversing together during each break or recess in the trial. It seems to me that it is fair game for the state's attorney to suggest to the jury that they draw such inferences from these discussions between the defendant and the alibi witness as the evidence warranted. Certainly, it would not be improper to suggest that they might be discussing the evidence that had already beeen introduced and the upcoming testimony of the alibi witness.

The trial court's ruling was correct when, over the objection of the defendant, it ruled: "I think the jury can draw the inferences they wish as to the conversations. She indicated what they talked about, and the fact that they spent time together can be commented on. It is in the evidence."

The record discloses that the state's attorney did not stray from the evidence and the inferences that can properly be drawn from it. There were inconsistencies in the alibi witness' sworn testimony in her pretrial deposition and that of her sworn testimony from the witness stand in court. The jury had a right to infer that this was the result of the de-

fendant and his witness putting their heads together during one of the recesses prior to her testifying.

I have searched the transcript of the final arguments of counsel and nowhere do I find any record from which it could be concluded that the state's attorney had asked the jury to infer that the defendant had suborned perjury, or had tampered with his alibi witness by telling her what to say or by encouraging her to lie as suggested in the majority opinion. I disagree vehemently when they state: "The prosecutor herself admitted that her argument raised improper inferences during a bench conference following the defendant's objection to her argument." The salient points at that bench conference consisted of the defense counsel telling the court:

> that there is no evidence whatsoever in this case that there was any fabrication made during any of those conferences. There is no such evidence in the case.

The state's attorney's reply was:

> I didn't suggest that there was . . . I said that they can infer that and they can.

In this swearing contest between the State's identifying witness and the defendant's alibi witness I am sure the jury were able to decide which of the two witnesses was the more believable by listening to their testimony and observing each of them. In any event the defendant has failed to affirmatively show prejudice. I would not therefore reverse this conviction on the basis of any impropriety in the state's attorney's closing argument to the jury.

The majority are further compelled to reverse the conviction because of the court's instruction to the jury concerning the position of the state vis-a-vis its witnesses. The portion of the charge which they say constitutes reversible error is as follows:

> Now, the State occupies a different position to a witness it calls than does a private party. It is the duty of the State to produce and use all witnesses within reach of subpoena of whatever character, who's testimony will shed light upon the case, leaving it for the Jury to weigh the evidence and to decide to what extent it is credible.

The public, at who's interest the prosecution is carried forward, has as much interest in establishing the innocence of the defendant, if he be innocent, as his guilt, if he be guilty. This is not to say the State's Attorney must call each and every witness who may have an account to relate as to a particular occurrence. The State's Attorney is vested with some degree of discretion in determining what course is both just and best, adapted to minimize undue or unnecessary prolongation of the trial.

We have often stated that a final charge or instruction to the jury must not be considered piecemeal and out of context, but as a whole. *State* v. *Gokey,* 136 Vt. 33, 36, 383 A.2d 601, 602 (1978). It is therefore essential that we consider the instructions of the court as to the credibility of all witnesses generally, since this instruction preceded the instruction about the special relationship of the State to its witnesses. It went as follows:

Now, there were only five witnesses who testified in this trial. And I am sure that you remember each one of them as they appeared on the stand. Now I want you to think about them. The credibility of the witnesses and the weight you will give their testimony are questions entirely for your determination. The law is that you are not bound to give the same weight to the testimony of each witness, but you should give the testimony of each witness such weight as you think it is fairly entitled to receive after considering the appearance of the witness on the stand; their candor or lack of candor; their feelings or bias, if any; their interest in the result of the trial, if any; their opportunities for observation; their means of information; and the reasonableness of the testimony which they gave. And the credibility of the witnesses and the weight you attach to their testimony are questions for your sound, practical judgment as fair-minded men and women.

Taking the instruction as a whole, it is clear that it did not place the weight of the trial court behind the State's chief

witness. As such, it could not have misled the jury, and thus "it ought to stand." *Id.*

The majority in reversing the conviction in this case concede that they did not feel the same compulsion to reverse the convictions when the same charge was given in *State* v. *St. Amour*, 139 Vt. 99, 422 A.2d 937 (1980), *State* v. *Jaramillo*, 140 Vt. 206, 436 A.2d 757 (1981), and in *State* v. *Sturgeon*, 140 Vt. 240, 436 A.2d 777 (1981), because the defendants in those cases were unable to demonstrate any prejudice by the charge. In our most recent case of *State* v. *Billado*, 141 Vt. 175, 446 A.2d 778 (1982), we again refused to reverse the conviction, where a similar charge was given, because the defendant did not object to it.

There is no more compelling reason now to reverse the case at hand. To be sure the defendant did object to the charge, but our holding in *Billado* did not say reversal would be automatic had the defendant objected. Instead we said that a charge on the relationship of the State to its witnesses "[w]hen properly objected to . . . *may* be grounds for reversal." (Emphasis added.) *Id.* at 188, 446 A.2d at 786. We used the word "may" to stress that it is discretionary with this Court.

This discretion, to reverse a conviction, is only to be exercised when there is a demonstrable showing of prejudice. *State* v. *Sturgeon, supra*, 140 Vt. at 246, 436 A.2d at 781; *State* v. *Jaramillo, supra*, 140 Vt. at 210, 436 A.2d at 759. Here the defendant has failed to show affirmatively how he was prejudiced by the charge given. Therefore, I would affirm.

I am authorized to say that Justice Peck joins in this dissent.