## State of Vermont v. Mark Hatcher

[706 A.2d 429]

No. 95-279

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed October 24, 1997

Motion for Reargument Denied December 19, 1997

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* and *Reggie Oh*, Law Clerk (On the Brief), of *Martin & Associates*, Barre, and *Mark Hatcher*, Pro Se, Swanton, for Defendant-Appellant.

**Morse, J.** Defendant Mark Hatcher appeals his conviction by jury of second-degree murder, in violation of 13 V.S.A. § 2301. He claims that the trial court: (1) erroneously denied his motion for judgment of acquittal based on double jeopardy principles and insufficient evidence; (2) improperly instructed the jury on the elements of second-degree murder and voluntary manslaughter; and (3) wrongly refused to instruct on mutual combat and imperfect self-defense. He also alleges prosecutorial misconduct during closing argument. We affirm.

On the morning of May 19, 1992, Kelli Baer's body was discovered in the living room of her Burlington apartment by a repairman. A large kitchen knife covered with blood was nearby. An autopsy revealed that the victim's throat had been slit and that she had suffered numerous additional incision wounds to her hands and fingers. She had also suffered bruises and abrasions to her jaw and upper chest, and smaller incisions and scratches on her neck, chest, and arms. The living room was in disarray, showing signs of a struggle. In the adjacent bedroom, a large bloodstain was found on the bed and numerous additional bloodstains and drops covered the walls, floors, lightswitches, and doors.

A neighbor of the victim had observed a man angrily pounding on the victim's door earlier that morning. He heard the man shout, "I know you're in there; open the door, you fucking bitch." Shortly thereafter, the neighbor heard loud noises and a general commotion coming from the victim's apartment. The disturbance lasted about fifteen minutes. The neighbor later identified defendant from a photographic line-up as the man he had observed pounding on the victim's door. Later that same morning, a cashier at a general store in

West Addison, some forty-five miles from Burlington, sold two sodas to a man meeting defendant's description. The man had dried blood on his hands which he said came from cutting himself with a knife; he denied an offer of medical assistance.

Defendant testified at trial. He stated that he had been a casual acquaintance of the victim. During the early morning hours of the day in question, he and the victim had drinks at a local bar and then returned to her apartment. At some point, the victim went into the bathroom with a knife in her hand and shut the door. After a few moments, he knocked on the door and she emerged with the knife. Defendant put his hand on hers and asked for the knife, whereupon she slashed his hand and tried to stab him. According to defendant, a desperate struggle for the knife then ensued during which she repeatedly attempted to stab him while he tried to wrest away the knife. Finally, as they struggled face to face, he forced the knife into her throat, pulled her to the floor, and sat on her until she expired. Defendant claimed that he had killed the victim to avoid being killed or seriously harmed himself. He never called an ambulance because he knew that she was dead and he didn't trust the police. Defendant stated that he was five feet ten inches-tall and weighed 160 pounds. The medical examiner described the victim as five feet five-inches tall and 110 pounds.

Defendant also presented evidence that the victim had suffered from a bipolar disorder, characterized by both manic and depressive moods, that she had been hospitalized on several occasions as a result of her illness, had suffered panic attacks, and had made several suicidal statements. She was not taking medication. No physician involved in her treatment, however, had ever observed the victim exhibit any violent or dangerous behavior toward herself or others. A mental health worker who met with the victim the day before her death testified that she appeared to be doing well, and was neither depressed nor manic. The same witness testified that the onset of a manic or depressive cycle is generally not abrupt, but occurs over several days or weeks.

## I.

Defendant first contends that double jeopardy principles bar his conviction of second-degree murder.

Defendant was charged in an information with one count of first-degree murder. At the close of the prosecution's case-in-chief, defendant moved for judgment of acquittal. The trial court granted

the motion as to first-degree murder, finding that there was insufficient evidence of premeditation and deliberation, but allowed the trial to continue on the lesser-included offense of second-degree murder.

■ The court's decision to submit the reduced charge to the jury was well within its authority and did not violate the double jeopardy clause. A defendant charged with first-degree murder may be convicted of the lesser-included offenses of second-degree murder or manslaughter. *In re Murray*, 131 Vt. 4, 7, 298 A.2d 835, 838 (1972). Indeed, our statute specifically provides that "[u]pon indictment or information for an offense under this chapter [homicide], a person may be convicted of a lesser included offense, as the case may be, upon the proofs." 13 V.S.A. § 2310(a). A court may thus, as here, submit to the jury the lesser offense if it determines that the evidence is insufficient to establish an element of the greater offense. See *State v. Olsen*, 165 Vt. 208, 212, 680 A.2d 107, 109 (1996); *United States v. LoRusso*, 695 F.2d 45, 52 (2d Cir. 1982), *cert. denied*, 460 U.S. 1070 (1983); *United States v. Blackwell*, 515 F.2d 125, 126-27 (4th Cir. 1975).

■ Defendant nevertheless asserts that because the information charged only one count of first-degree murder, the judgment of acquittal necessarily dismissed — and jeopardy necessarily attached to — the entire count. The argument fails to apprehend that in charging the greater offense the information necessarily charged all lesser-included offenses. *LoRusso*, 695 F.2d at 52 n.3; *Blackwell*, 515 F.2d at 126-27. Thus the trial court could determine that the evidence was insufficient to support an element of first-degree murder and submit the reduced charge of second-degree murder to the jury, without eliminating the entire murder count and having jeopardy attach. See *LoRusso*, 695 F.2d at 54 ("[T]he reduction instead of the elimination of count 2 . . . submitted in the normal course of the trial to the original jury . . . did not violate principles of double jeopardy."). That is precisely what occurred here. As the court explained, it had determined to "dismiss the charge of premeditated murder for failure to demonstrate premeditation . . . and [allow] the trial [to] continue on the lesser included charge of second degree murder." The judgment of acquittal did not eliminate the count, as defendant argues, but merely reduced the charge to be submitted to the jury.

Defendant's reliance on *United States v. Blount*, 34 F.3d 865 (9th Cir. 1994), is misplaced. There, in contrast to the case at bar, the trial court dismissed two felony counts for insufficient evidence of a required element "without any reservation of the [lesser-included]

. . . charges." *Id.* at 868. Indeed, before ruling, the court explicitly offered to charge a lesser-included misdemeanor, but the government refused that concession and took an all-or-nothing approach. The court thereupon informed the jury that the felony counts were no longer a part of the case. The next day, after trial had resumed, the court changed its mind and reinstated the counts as lesser-included misdemeanors. On appeal, the Ninth Circuit concluded that having granted the motion for acquittal and informed the jury of its decision, "preserving no element of those charges for submission to the jury, [the court's] ruling of acquittal ended [defendant's] jeopardy on the charged felony and any lesser included offenses." *Id.* Here, in granting the judgment of acquittal the trial court expressly reserved the lesser-included offense for submission to the jury. Hence jeopardy did not attach to the charge of second-degree murder.

## II.

Defendant next contends that the trial court was estopped from submitting the second-degree murder charge to the jury because it had concluded that there was insufficient evidence of deliberation.

Defendant assumes, incorrectly, that deliberation is an essential element of second-degree murder. Although some decisions of this Court have implied otherwise, see, e.g., *State v. Delisle*, 162 Vt. 293, 308, 648 A.2d 632, 641 (1994) (evidence was sufficient to show that defendant, convicted of second-degree murder, acted with deliberation); *State v. Brunell*, 159 Vt. 1, 6-7, 615 A.2d 127, 130 (1992) (instruction on intent element of second-degree murder was adequate where court charged that defendant acted "willfully and deliberately"), we have never held that deliberation is an element of second-degree murder. It plainly is not.

13 V.S.A. § 2301 provides that murder committed by lying in wait, in the course of certain felonies, or "by wilful, deliberate and premeditated killing . . . shall be murder in the first degree. All other kinds of murder shall be murder in the second degree." The plain import of § 2301 is that first-degree murder is murder *plus* the elements of willfulness, deliberation and premeditation, and that murder *without* these elements is second-degree murder. See 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.7, at 245 (1986) ("[I]ntent-to-kill murder without the added ingredients of premeditation and deliberation is second degree murder."). Defendant's construction of the statute would render the deliberation element of

first-degree murder mere surplusage, a result which we have repeatedly cautioned against. See, e.g., *Trombley v. Bellows Falls Union High School*, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) (statute should not be construed so as to render part of it surplusage).

Requiring a showing of deliberation, moreover, would introduce a state-of-mind element that we have never applied to second-degree murder. As we explained in *State v. Johnson*, 158 Vt. 508, 515, 615 A.2d 132, 136 (1992), murder without the first-degree elements, i.e., second-degree murder, consists simply of the "unlawful killing of a person with 'malice aforethought.'" We have defined the latter term as "an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm." *State v. Doucette*, 143 Vt. 573, 582, 470 A.2d 676, 682 (1983). Thus deliberation forms no part of the offense of second-degree murder.

Accordingly, defendant's conviction of second-degree murder was not barred by the court's finding that there was insufficient evidence of deliberation.

## III.

Defendant next claims that the court erred in denying his motion for judgment of acquittal at the close of the evidence. He asserts that the State's evidence failed to establish the requisite mental state for second-degree murder or negate his claim that he acted out of passion or provocation.

The standard of review governing the denial of a motion for judgment of acquittal is "whether 'the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant[] [is] guilty beyond a reasonable doubt.'" *Delisle*, 162 Vt. at 307, 648 A.2d at 641 (quoting *State v. McBurney*, 145 Vt. 201, 204, 484 A.2d 926, 928 (1984)).

As earlier noted, to support a conviction of second-degree murder it is sufficient to prove "an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm." *Doucette*, 143 Vt. at 582, 470 A.2d at 682. A defendant's mental state may be inferred from the facts and circumstances surrounding the killing, as well as the manner of death. *Olsen*, 165 Vt. at 211, 680 A.2d at 109; *Delisle*, 162 Vt. at 308, 648 A.2d at 642. The evidence here established

that shortly before the killing defendant was observed shouting and pounding angrily on the door of the victim. An autopsy revealed that the victim had suffered numerous incisions on both of her hands typical of defensive wounds, bruises caused by blunt trauma to the chest and jaw, as well as bruises under the scalp consistent with someone pulling on her hair. She had also incurred smaller incisions on the neck, earlobe and left forearm, and a massive, eight-inch long, one and a half-inch deep slit to her throat consistent with having been inflicted from behind. The defendant, in contrast, suffered an incision wound to three fingers for which he never sought medical treatment. Given these circumstances and the nature and severity of the victim's injuries, the jury could have concluded beyond a reasonable doubt that defendant possessed any one of the enumerated mental states sufficient to support a conviction of second-degree murder, and could reasonably have rejected defendant's claim that he acted out of passion or provocation in response to an attack by the victim.

## IV.

Defendant next contends the court erred in instructing the jury on the elements of second-degree murder and voluntary manslaughter. He claims that the court failed adequately to inform the jury of the State's burden to *disprove* that the murder occurred in the heat of passion or upon reasonable provocation in order to obtain a conviction of second-degree murder. He also contends that the instructions erroneously placed the burden on the defense to establish the existence of passion or provocation in order to obtain a verdict of voluntary manslaughter.

The element that has traditionally distinguished murder from manslaughter is "malice." *State v. Duff*, 150 Vt. 329, 331, 554 A.2d 214, 215 (1988). Because of its tendency to confuse, however, the term malice or malice aforethought has been replaced by the specific states of mind or willfulness required for each type of murder. *Johnson*, 158 Vt. at 519, 615 A.2d at 138. Voluntary manslaughter is an intentional killing committed under extenuating circumstances that may negate willfulness, such as sudden passion or provocation that would cause a reasonable person to lose control. *State v. Turgeon*, 165 Vt. 28, 32, 676 A.2d 339, 342 (1996); *State v. Wheelock*, 158 Vt. 302, 310, 609 A.2d 972, 977 (1992). Where passion or provocation is implicated, the court must instruct the jury that to establish murder the State must prove beyond a reasonable doubt that the accused did not kill under the

influence of passion or provocation. *Duff*, 150 Vt. at 333, 554 A.2d at 216.

The trial court here adequately informed the jury of the State's burden. In defining the requisite mental state for a conviction of second-degree murder, the court instructed:

> In considering the mental element, you should also consider the passion and provocation instruction I will give you . . . . It is the prosecution's burden to prove beyond a reasonable doubt this mental element. And the absence of passion and provocation upon which defendant acted in order to secure a conviction for murder.

Although somewhat less than artful, the court's instruction adequately explained that it was the "prosecution's burden to prove beyond a reasonable doubt . . . the absence of passion and provocation . . . in order to secure a conviction for murder." The case is thus distinguishable from *State v. Bishop*, 589 A.2d 625 (N.J. Super. Ct. App. Div. 1991), cited by defendant, where the court made no mention whatsoever of passion or provocation in connection with the second-degree murder instructions. See *id.* at 628 ("At no time during the initial charge on murder was the jury told to consider passion/provocation which could reduce the murder to manslaughter unless the State proved beyond a reasonable doubt that defendant did not kill in the heat of passion.").

■ Defendant further asserts that any instructional error was compounded by (1) the court's failure to discuss passion or provocation when informing the jury that defendant had been acquitted of first-degree murder but that the trial would proceed on the second-degree murder charge, and (2) the prosecutor's failure to discuss provocation or passion as an element of second-degree murder in his closing argument. Defendant failed to object to either point below. In view of the adequacy of the court's instruction on the State's burden, neither omission constitutes plain error.

Defendant further contends that the court's voluntary manslaughter instruction confused the State's burden of proof in several respects. He focuses first on the court's comment that "the crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or provocation." Citing *State v. Erazo*, 594 A.2d 232 (N.J. 1991), he contends that the statement improperly shifted to defendant the burden of proving passion or provocation. Although the court did not repeat that it was the State's burden to disprove passion

or provocation, its earlier instruction had made this clear, and the statement in question would not have led a reasonable jury to conclude otherwise. *Erazo*, moreover, is distinguishable. There the trial court explicitly placed the burden of proof on the defense, instructing that a manslaughter conviction could be returned if the jury was "satisfied beyond a reasonable doubt that [the killing] was committed in the heat of passion." *Id.* at 237.

Defendant also asserts that the court's manslaughter instruction erroneously suggested that passion or provocation was an essential element of that offense. As defendant notes, we have held that passion or provocation is not an indispensable element of voluntary manslaughter, and to imply otherwise is apt to confuse the jury because the State has no interest in proving this element when seeking a murder conviction. *Duff*, 150 Vt. at 333, 554 A.2d at 216. As noted, the court's instructions stated plainly, and correctly, that to the extent passion or provocation was implicated, it was the "prosecution's burden to prove beyond a reasonable doubt . . . the absence of passion and provocation . . . in order to secure a conviction for murder." We thus perceive no likelihood that the jury was misled into believing otherwise.

## V.

Defendant raises a number of additional claims of instructional error. First, he contends that the court committed plain error by failing to give the jury the option of finding him guilty of voluntary manslaughter. According to the transcript, the court instructed the jury as follows, "Your verdict in this case will be one of the following, and there are four choices: Not guilty, guilty of murder, not guilty of voluntary manslaughter, guilty of involuntary manslaughter." The court reporter has informed the Court, however, that the transcript is incorrect, and that the actual instruction was as follows: "Your verdict in this case will be one of the following, and there are four choices: not guilty, guilty of murder, guilty of voluntary manslaughter, guilty of involuntary manslaughter." Hence, there was no error.

Defendant also asserts that the court impermissibly endorsed the prosecution's theory of the case when it charged, in connection with voluntary manslaughter, that the State must prove the victim died "as a result of lethal knife *wounds* to the throat." (Emphasis added.) Defendant testified that he cut the victim's throat once in a "clean sweep"; the State introduced evidence inconsistent with defendant's testimony, suggesting instead that the victim had suffered either two

wounds to the neck, or one jagged wound. Thus, the trial court's reference to "wounds" in the plural was not necessarily an endorsement of the prosecution's case. Moreover, the instruction did not presume the presence of multiple wounds, as defendant contends, but rather placed the burden on the State of demonstrating that the victim died as the result of them. Thus there was no error.

Relying on *State v. McDonnell*, 32 Vt. 491 (1860), defendant asserts that the trial court erred in refusing to instruct the jury on "mutual combat." *McDonnell* merely referred to mutual combat as a species of provocation, not as a separate doctrine relating to manslaughter. *Id.* at 541. The jury was adequately instructed in this regard, and there was no error in refusing to instruct further on "mutual combat provocation."

■ Defendant also contends the court erred by refusing to instruct on the doctrine of imperfect self-defense, which requires that murder be reduced to manslaughter if the jury finds that defendant harbored an honest but unreasonable belief in the need to defend by deadly force. We have not explicitly adopted this doctrine, see *Wheelock*, 158 Vt. at 309-10, 607 A.2d at 976-77, nor need we do so here. Defendant had requested the instruction on the ground that the jury might find all of the elements of self-defense except that defendant failed to exercise a reasonable opportunity to retreat. He did not argue that defendant honestly but unreasonably believed in the need for deadly force. Hence he did not preserve that issue for appeal. See *State v. Ringler*, 153 Vt. 375, 378, 571 A.2d 668, 670 (1989) (appeal must be based upon same theory of objection raised at trial). Nor does he offer any basis on appeal for a finding that the ruling constituted plain error.

As for the duty to retreat, the court instructed that if defendant honestly and reasonably believed "it was immediately necessary to use deadly force to protect himself from an imminent threat of death or bodily injury, the law does not require him to retreat." Thus the jury could have acquitted on the basis of self-defense even if it found that defendant failed to exercise an opportunity to retreat.

## VI.

■ Finally, defendant asserts that the prosecutor prejudicially misstated the law in two respects during closing argument. Defendant failed to object in either instance; hence the issues are not cognizable on appeal absent plain error. *State v. Billado*, 141 Vt. 175, 182, 446 A.2d 778, 782 (1982).

■ Defendant first contends the prosecutor erroneously informed the jury that defendant's self-defense claim somehow precluded a conviction of voluntary manslaughter. The prosecutor did not assert that the two doctrines were mutually exclusive. He argued, rather, that defendant's own testimony negated a finding of manslaughter based on his denial that he had acted out of rage or anger or lost control. The prosecutor was entitled to recount and comment upon the evidence at trial and draw legitimate inferences therefrom. *State v. Blakeney*, 137 Vt. 495, 504, 408 A.2d 636, 642 (1979).

■ Second, defendant asserts the prosecutor erroneously implied that sudden passion can result only from anger, rage or loss of control, to the exclusion of fear for one's life or adequate provocation. The prosecutor's remarks did not carry this implication. Furthermore, the trial court instructed the jury that the "emotional excitement" constituting heat of passion "must have been the result of something that would cause an ordinary person to act rashly. . . . The law does not say what things are enough to do this. That is for you to decide." The court's instruction was sufficiently broad to include fear and provocation.

*Affirmed.*