2006 VT 18

## State of Vermont v. Mark King

[897 A.2d 543]

No. 03-468

Present: **Reiber, C.J., Johnson and Skoglund, JJ., and Zimmerman, D.J., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed February 24, 2006
Motion for Reargument Denied April 4, 2006

*Robert Simpson*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** In this appeal, defendant asserts that the trial court erred in sentencing him to twenty-seven to thirty years in prison after he pled guilty to voluntary manslaughter and first-degree aggravated domestic assault. He contends that the court's decision is not supported by the evidence. We affirm.

¶ 2. Defendant was charged with second-degree murder in April 1998 for causing the death of his girlfriend, Caroline Critchfield, by throttling her and striking her in the head. The victim, who was eight inches shorter than defendant and fifty pounds lighter, suffered extensive physical injuries; she ultimately died from numerous blows to the head. Defendant maintained that the victim had provoked him by pretending to kiss him and then biting down on his lip.

¶ 3. In January 2003, the parties entered into a plea agreement. The State amended the information from second-degree murder to two counts: voluntary manslaughter and first-degree aggravated assault. Defendant agreed to plead guilty to these charges, and the State agreed that at the sentencing hearing it would be capped at arguing for an aggregate sentence of twenty-seven to thirty years to serve. Defendant was free to argue for less. The agreement provided:

> The Defendant understands that the State will argue at sentencing that the Defendant's conduct constituted 2d Degree Murder in that he acted with wanton disregard for the likelihood that his conduct would naturally cause the death of Caroline Critchfield. Defendant understands further that if the Court accepts the State's argument, Defendant may receive a minimum sentence warranted for 2d degree murder (up to 27 years).

> The State understands that the Defendant intends to argue at sentencing that his conduct constituted manslaughter. The State understands further that if the Court accepts the Defendant's argument, Defendant may receive a sentence warranted for manslaughter.

In a separate pleading, defendant recognized that the State would seek a twenty-seven to thirty-year aggregate sentence at sentencing, which the State contended was consistent with a sentence for second-degree murder. Defendant also acknowledged that if the State proved by a preponderance of the evidence that a sentence consistent with second-degree murder was warranted, the court could impose such a sentence.

¶ 4. The State indicated that it entered into the plea agreement because it was concerned that a jury might compromise on a verdict and credit defendant's claims of provocation. If defendant was found guilty of manslaughter rather than murder, the maximum sentence that he could receive would be fifteen years. Under the plea agreement, and because defendant pled guilty to two offenses, the State was entitled to argue for twenty-seven to thirty years to serve, which

in effect gave it the right to argue for a second-degree murder sentence. The State, in turn, gave up its right to argue for a much lengthier sentence if defendant was convicted of second-degree murder. Defendant indicated a similar understanding of the plea agreement, and he also recognized that, to his benefit, he could no longer be sentenced to life in prison for causing the victim's death.

¶ 5. Defendant did not testify at the sentencing hearing, and both parties relied on statements that defendant made to emergency room personnel and police shortly after the killing. The trial court found that defendant had given varying versions of what had occurred, and his story changed as he was confronted with additional physical evidence of the victim's injuries. In his first statement, which he made to an emergency room physician, defendant indicated that the victim had fallen asleep on the couch after they had returned home from a bar. Defendant said that when he went to check on her, she leaned forward and bit him; he hit her once in response. When defendant checked on her again later, he could not wake her up. He brought the victim to the emergency room, indicating that she had overdosed on drugs.

¶ 6. In his second statement, given to police shortly after he brought the victim to the emergency room, defendant described the victim storming around the apartment. He stated that when he went into the living room, the victim approached him as if to give him a hug, and then she moved forward and bit him on the lip and would not let go. Defendant stated that he hit her once in the face, and the punch occurred in a doorway between the living room and the bedroom. When police asked defendant about bruising on the side of the victim's head, defendant stated that he was certain that he struck the victim only once. He insisted that he did not grab the victim's throat but instead pushed her one time. When police asked defendant why the victim's apparent injuries exceeded the scenario that he described, defendant stated that he had nothing whatsoever to add.

¶ 7. Defendant was then advised that he was under arrest for second-degree murder, and he declared that he "sincerely" and "honestly" hadn't done anything and he hadn't beaten the victim. When he was informed that the victim had also been choked, defendant stated he hadn't choked her, and that "honestly," all he had done was push her away. Defendant then said that he might have pushed the victim away by pushing on her shoulders but not her neck; he later stated that it was possible that he had pushed her on the neck.

¶ 8. Later that day, defendant gave a third statement to police, which he initiated. He stated that the victim rose up and bit him on the lip and that he "pushed, I hit, no, I didn't choke her. No I didn't." He added that his arm was around her neck as he pushed her away, and the victim was clawing at him. He stated that he punched the victim in the nose, and he then fell backwards into the bedroom. The victim got up first and came toward him, clawing at him. Defendant thought that he then grabbed her around the neck. He spun her around and he came down on top of her. He stated that her head hit the floor, probably on her side, and he indicated that he was defending himself. Defendant told police that he assumed that everything was fine and the victim had then gone to the couch. When he found her later that night, he thought that she had overdosed and choked on her own vomit.

¶ 9. The trial court found defendant's version of events incredible and grossly inconsistent with the victim's injuries. The court explained that, in addition to the strangulation trauma to Ms. Critchfield's neck and throat, she suffered some thirty traumas to her arms, back, forehead, back of her head, eyes, nose, mouth, and jaw. These included: nine impact injuries on her arms; three impacts on her head and forehead from her head being pushed into a rug; three major impacts to the back of her head; two black eyes; a split eyelid, which was not caused by her face hitting the rug; a cut nosebridge; two major impacts to her mouth; and at least two major impacts to her jaw. The court found that these injuries did not result from a single blow to the nose, a push, a head-lock, and a fall on her head. Even assuming secondary impacts from being pushed down once and falling down once, defendant's story fell far short of explaining the totality of the victim's injuries. The court also found defendant's version of where the incident occurred inconsistent with the State's evidence that the victim's blood, torn clothing, and necklace were found in various rooms throughout the apartment.

¶ 10. The court found that defendant had obviously and repeatedly lied in his statements to emergency room personnel and police, and it found defendant's assertion that he had been provoked by the victim no less self-serving and exculpatory than any of his other demonstrated falsehoods about what happened that night. The court thus concluded that a preponderance of the evidence showed that defendant's claim of being bitten first was a lie and the logical inference was that defendant had not been provoked to beat the victim as the result of a first bite. Consequently, for purposes of the plea agreement, de-

fendant's intentional killing of Ms. Critchfield was not mitigated by actual provocation and it constituted second-degree murder. The court considered the sentencing factors set forth in the second-degree murder statute and concluded that the murder was particularly severe, brutal, and cruel. It further concluded that, under the sentencing structure of 13 V.S.A. § 2303, this major aggravating factor, with no substantial mitigation, would support an increase in the twenty-year minimum prescribed for second-degree murder. It thus found that the State's request for a twenty-seven to thirty-year aggregate sentence was justified. Accordingly, it sentenced defendant to fourteen to fifteen years for voluntary manslaughter, and thirteen to fifteen years for first-degree aggravated domestic assault, to be served consecutively. Defendant appealed.

¶ 11. On appeal, defendant argues that the trial court erred in finding that he committed second-degree murder rather than manslaughter. We note, however, that defendant was not sentenced for second-degree murder under 13 V.S.A. § 2303(b). Instead, he received a sentence that was consistent with the statutory penalties for the two crimes that he admitted committing — first-degree aggravated domestic assault and voluntary manslaughter. The first-degree aggravated domestic assault charge was based on defendant's act of strangling the victim — the victim suffered external and deep internal injuries to her neck and damage to her hyoid bone when strangled by defendant. The evidence also demonstrated that the victim had been severely beaten. Defendant did not bring the victim to the hospital right away, and it may have taken at least one hour or possibly two before the victim died from the blows to her head. Indeed, when defendant finally did take the victim to the hospital, he stopped to buy cigarettes on the way. The evidence adduced at the sentencing hearing plainly supported the imposition of the maximum statutory penalty for voluntary manslaughter and first-degree aggravated domestic assault. Because defendant received a sentence that was within the statutory limits and within the boundaries of the plea agreement as to both the charges and the range of potential sentences, it is difficult to see how defendant suffered any harm. See *State v. Cyr*, 141 Vt. 355, 358, 449 A.2d 926, 927 (1982) ("In sentencing we defer to the lower court and will not review sentences within the statutory limits absent exceptional circumstances.").

¶ 12. Nonetheless, in light of the parties' unusual plea agreement, we address defendant's argument that the trial court erred in imposing an aggregate sentence that was consistent with a penalty

for second-degree murder. As an initial matter, we reject defendant's request, made during the pendency of his appeal, that his sentence should be vacated in light of our decision in *State v. Provost*, 2005 VT 134, 179 Vt. 337, 896 A.2d 55. In *Provost*, we concluded that 13 V.S.A. § 2303, which sets forth the penalties for first-degree and second-degree murder, was unconstitutional because it allowed the trial court, rather than a jury, to find facts that increased the penalty for first-degree murder beyond the statutory maximum. *Id.* ¶ 15; see also *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

■ ¶ 13. Our holding in *Provost* is not applicable here. Although the trial court considered aggravating and mitigating factors in determining defendant's sentence, defendant was neither convicted nor sentenced for second-degree murder. Instead, he was sentenced for the two crimes to which he pled guilty — voluntary manslaughter and first-degree aggravated domestic assault — and the sentences that he received did not exceed the statutory maximums for these crimes. See 13 V.S.A. § 2304 (maximum penalty for manslaughter is fifteen years in prison and $3000 fine); *id.* § 1043(b) (maximum penalty for first-degree aggravated domestic assault is fifteen years in prison and $25,000 fine). Moreover, defendant expressly agreed to have the trial court serve as finder of fact to determine the appropriate sentence. He recognized that if the court accepted the State's argument that he acted with wanton disregard for the likelihood that his conduct would naturally cause Ms. Critchfield's death, he could receive a sentence of twenty-seven to thirty years. Defendant thus waived his right to challenge the trial court's sentencing procedure on appeal. See *Blakely v. Washington*, 542 U.S. 296, 310 (2004) (explaining that defendant may waive his *Apprendi* rights, and when a defendant pleads guilty to a crime, "the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding"). We therefore reject defendant's request to allow supplemental briefing on this issue, and we reject his assertion that his sentence should be vacated in light of our decision in *Provost*.

¶ 14. We turn to the heart of defendant's appeal. Defendant maintains that the State failed to sustain its burden of proof at sentencing because it failed to present any evidence that directly contradicted his version of how the fight began. According to defend-

ant, even if the trial court disbelieved his statements to authorities, there was no affirmative proof of the absence of provocation.

¶ 15. We review the trial court's sentencing decision for abuse of discretion, *State v. Gibney*, 2003 VT 26, ¶ 53, 175 Vt. 180, 825 A.2d 32, and we find no abuse of discretion here. The evidence supports the trial court's finding that defendant did not kill Ms. Critchfield under the influence of provocation, and thus a twenty-seven to thirty-year aggregate sentence was appropriate under the terms of the plea agreement.

¶ 16. Second-degree murder is the unlawful killing of another person with "an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm." *State v. Hatcher*, 167 Vt. 338, 344, 706 A.2d 429, 432 (1997) (quotation omitted). Voluntary manslaughter has the same intent element as murder but it is distinguished by the presence of "extenuating circumstances that may negate willfulness, such as sudden passion or provocation that would cause a reasonable person to lose control." *State v. Blish*, 172 Vt. 265, 270, 776 A.2d 380, 385 (2001) (quotation omitted). Heat-of-passion manslaughter, at issue here, requires: "adequate provocation; inadequate time to regain self-control ('cool off'); actual provocation; and actual failure to cool off." *State v. Shabazz*, 169 Vt. 448, 451, 739 A.2d 666, 668 (1999).

¶ 17. In this case, under the terms of the parties' plea agreement, the State was required to prove by a preponderance of the evidence that defendant acted with wanton disregard of the likelihood that his conduct would naturally cause the victim's death and that he did not kill the victim under the influence of provocation.* Cf. *Hatcher*, 167 Vt. at 345-46, 706 A.2d at 433 (explaining that, in a jury trial, "[w]here passion or provocation is implicated, the court must instruct the jury that to establish murder the State must prove beyond a reasonable doubt that the accused did not kill under the influence of passion or provocation"). The State met its burden here. It presented substantive evidence to discredit the only evidence of provocation in the case — defendant's statements to police and emergency room personnel. The State was

---

* Defendant acknowledged both in writing and on the record at the change-of-plea hearing that the State would bear the burden of proving his guilt of second-degree murder by a preponderance of the evidence.

not obligated to provide additional affirmative evidence to sustain its burden of proof.

¶ 18. As noted above, defendant maintained that the victim had initiated the fight by biting his lip. He provided varying accounts of how he reacted to the bite, ranging from a quick punch to the victim's face to a longer struggle where he put the victim in a head-lock and fell on top of her. The trial court found that the State's evidence demonstrated that defendant's version of events was incredible. The various scenarios he described were grossly inconsistent with the victim's extensive injuries, and also inconsistent with blood evidence and other physical evidence showing that the violence had occurred in several rooms throughout the apartment. The State's evidence established that it may have taken several hours before the victim died, and she may have been ambulatory before she died, yet defendant did not bring the victim to the hospital right away. Contrary to defendant's professed concern at discovering the victim's unresponsive body, his alleged fears that she had suffered a drug overdose, and his rushed effort to bring her to the emergency room, the State also produced evidence that defendant stopped to buy cigarettes on the way to the hospital. As the trial court found, defendant's statements were self-serving and exculpatory, and his story evolved as he was confronted by additional physical evidence of the victim's injuries. The State established that defendant repeatedly lied about what transpired, and in light of this evidence, it was reasonable for the trial court to infer that defendant also lied about how the fight began. See *State v. Durenleau*, 163 Vt. 8, 12, 652 A.2d 981, 983 (1994) ("In assessing circumstantial evidence, the fact-finder may draw rational inferences to determine whether disputed ultimate facts occurred."); *State v. Paradis*, 146 Vt. 345, 347, 503 A.2d 132, 133 (1985) ("[P]roof of facts includes reasonable inferences properly drawn therefrom.").

¶ 19. We reject defendant's assertion that the State was required to produce additional evidence to sustain its burden of proof at sentencing. While defendant cites numerous cases to support the proposition that the disbelief of a part of a witness's statements does not provide affirmative proof of a separate fact, defendant mischaracterizes the issue before the trial court. In this case, defendant's statements to police were the only evidence of provocation. The State produced evidence to discredit defendant's version of events, and the trial court acted within its discretion in rejecting defendant's version of how the fight began and finding an absence of provocation.

Cf. *State v. Barrett*, 130 Vt. 197, 201, 290 A.2d 14, 16 (1972) (where defendant provided only direct evidence of how killing occurred, and his testimony was necessarily undisputed, and defendant claimed self-defense, the credit to be given to defendant's testimony was still a matter for the jury's determination and the jury had the right to believe the testimony, reject it in part, or reject it altogether); see also *State v. Camley*, 140 Vt. 483, 489, 438 A.2d 1131, 1134 (1981) ("The jury has the right to believe all, part, or none of the testimony of any witness, and this rule applies to the defendant as well as any other witness.").

¶ 20. We reject defendant's assertion that the trial court ignored additional evidence of provocation, such as the factual basis for his guilty pleas or the fact that his lip was cut. It is difficult to discern, and defendant fails to explain, how the factual basis for his guilty pleas assists his arguments on appeal. Defendant's admission through his guilty pleas that he caused the victim's death by repeatedly striking her in the head and that he strangled her does not undermine the court's conclusion regarding the absence of provocation. The fact that defendant's lip was cut similarly does not provide proof that he was provoked. As discussed above, there was no credible evidence to show that the victim bit defendant first. We are equally unpersuaded by defendant's assertion that the court should have considered the consistency of his statements regarding the bite as evidence that he was provoked. This argument goes to the court's assessment of defendant's credibility, a matter exclusively for the trial court. *State v. Couture*, 169 Vt. 222, 227, 734 A.2d 524, 528 (1999). The court found defendant not credible, and we will not disturb its assessment on appeal.

¶ 21. Finally, we find no merit in defendant's assertion that, even if the trial court did not believe that the bite occurred at the beginning of the fight, there was no evidence to show that he had not been provoked at some point during the fight. Defendant did not rely on this argument below, nor does it appear in any of his statements to authorities. Instead, defendant took the position, which the trial court rejected, that the victim initiated the fight by biting his lip and she suffered the deadly beating as a result. In any event, with the court's rejection of defendant's testimony, there was no evidence whatsoever to show provocation. We find no error in the court's imposition of an aggregate sentence of twenty-seven to thirty years.

*Affirmed.*