ENTRY ORDER
2021 VT 31
SUPREME COURT DOCKET NO. 2021-073
APRIL TERM, 2021

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| | } | |
| Reginald Book | } | DOCKET NO. 20-CR-03313 |

Trial Judge: David R. Fenster

In the above-entitled cause, the Clerk will enter:

¶ 1.    Defendant Reginald Book appeals the superior court's order holding him without bail under 13 V.S.A. § 7553. He argues that the State failed to produce sufficient evidence of guilt on an element of a charged offense and failed to produce evidence of certain facts alleged in the information. We affirm.

¶ 2.    A six-count information charges defendant with attempted second-degree murder, aggravated assault, simple assault, unlawful trespass, resisting arrest, and simple assault on a protected professional.[1] As the attempted murder charge subjects defendant to the possibility of life imprisonment, see 13 V.S.A. §§ 9(a), 2303(a)(2), the State moved to hold defendant without bail under 13 V.S.A. § 7553 ("A person charged with an offense punishable by life imprisonment when the evidence of guilt is great may be held without bail.").

¶ 3.    The superior court held a weight-of-the-evidence hearing and applied the familiar § 7553 analysis: "The evidence of guilt is great if substantial, admissible evidence, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt." State v. Blow, 2020 VT 106, ¶ 3, __ Vt. __, __ A.3d __ (mem.) (quotation omitted). If the State meets this initial burden, a presumption against release arises, and "the burden shifts to the defendant to persuade the court to exercise its discretion to set bail or conditions of release." State v. Auclair, 2020 VT 26, ¶ 16, __ Vt. __, 229 A.3d 1019 (mem.). The court must exercise this discretion and in doing so may consider the factors in 13 V.S.A. § 7554(b). Id. ¶ 3. These factors include:

> [T]he nature and circumstances of the offense charged; the weight
> of the evidence against the accused; and the accused's family ties,
> employment, character and mental condition, length of residence in

---

[1] Respectively, 13 V.S.A. §§ 9(a), 2301; 1024(a)(5); 1023(a)(1); 3705(d); 3017(a)(1); 1028(a)(1).

the community, record of convictions, and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

13 V.S.A. § 7554(b)(2). The court may also consider "[r]ecent history of actual violence or threats of violence . . . as bearing on the character and mental condition of the accused." Id.

¶ 4. The State introduced the following evidence at the weight-of-the-evidence hearing. On December 4, 2020, three police officers responded to a trespass complaint in a home in West Haven, Vermont. When they arrived, they learned that defendant had entered his tenant's locked residence without the tenant's permission and engaged in a verbal altercation with the tenant. The officers tried to talk with defendant, but he became agitated and started yelling at them. A physical altercation ensued between defendant and the three officers. Defendant resisted their commands and wrapped his legs around one of the officers, squeezing the officer. Complaining of injury, defendant was taken to the hospital and later released on citation. The charges of unlawful trespass, resisting arrest, and simple assault on a protected professional stem from this evidence.

¶ 5. Further evidence was introduced that on the morning of December 6, defendant went to his family's farm in West Haven and proceeded to yell at his brother. Defendant's nephew intervened and defendant pushed him, causing the nephew to fall. The nephew called the police and a state trooper investigated the incident. This evidence led to the simple-assault charge.

¶ 6. On the afternoon of the same day, Sergeant Cushing and Troopers Sullivan, Roland, and Ducharme of the Vermont State Police drove to a nearby farm in West Haven to arrest defendant for the incident involving the nephew. There, they found defendant in the driver's seat of an airport shuttle bus. The officers repeatedly asked defendant to exit the vehicle and talk to them. Defendant refused. After a few minutes, defendant rapidly drove away from the officers, farther into the farm field. Sergeant Cushing followed and continued to ask defendant to exit the vehicle. Defendant drove away again into the farm field and refused to exit the bus.

¶ 7. For more than an hour thereafter, the four officers stood near the bus trying to convince defendant to exit. They deployed spike strips intended to deflate vehicle tires to corral the bus into an increasingly smaller area. As this was unfolding, defendant was on the phone with a 911 operator and told the operator, "First one that starts playing fucking games is going to be sorry." On one occasion, defendant moved the bus in the direction of the officers. In response, Trooper Sullivan unholstered his sidearm and pointed it at defendant, yelling at him to get out of the bus. In an agitated voice, defendant told the 911 operator, "They keep fucking around, somebody gonna get hurt." Minutes later, Trooper Sullivan tried to move a spike strip in front of the bus and defendant drove the bus at him, coming closer than on the previous occasion. This caused Trooper Roland to pull his weapon and discharge several rounds into the bus. A police cruiser dash camera in the distance captured the bus moving rapidly towards Trooper Sullivan, the trooper losing his footing and then running out of the way, and Trooper Roland discharging his weapon. Defendant then told the 911 operator, "Now, they're firing at me. You're playing—They will get run over for less than that." The encounter ended early the next morning when troopers finally broke into the bus and placed defendant in custody. Subsequent forensic investigation led to an estimate that the bus came within approximately twelve feet of Trooper Sullivan when he stumbled and had to run out of the way. The evidence of this incident resulted in the charges of attempted second-degree murder and aggravated assault.

2

¶ 8.    Based on this evidence, the court concluded that the State had met its burden to produce substantial, admissible evidence that, taken in the light most favorable to the State and excluding modifying evidence, can reasonably show defendant guilty of attempted second-degree murder beyond a reasonable doubt.  The court specifically found that there was enough evidence to support a finding that defendant acted with the intent to kill Trooper Sullivan.

¶ 9.    Defendant then introduced evidence bearing on the discretionary bail decision.  In particular, he elicited testimony from a friend of sixty years who lived in the West Haven area.  This friend testified that defendant had arrived from Florida some time before the December 4 and 6 incidents and defendant "wasn't in his right mind."  The friend testified that, in contrast, he talked to defendant on the phone after the incidents and defendant had "mellowed out" and could follow the court's orders.  Defendant proposed that before trial, he could live in Vermont and in his second home in Florida.

¶ 10.    The court recounted the evidence of the incidents on December 4 and 6, in which defendant had verbal and physical altercations with three sets of people.  The court considered the danger to the public defendant exhibited throughout these incidents and his unwillingness to follow law enforcement orders.  It expressed concern that if defendant were released, he would not abide by conditions of release or submit to arrest.  The court acknowledged the testimony of defendant's friend but had no assurance that the aggressive behavior would not recur.  The court also considered that between 2015 and 2016 defendant was convicted of resisting arrest and simple assault, though he did not have prior failures to appear in court or bail violations.  Weighing these considerations, the court declined to impose bail or conditions of release.

¶ 11.    On appeal, defendant argues that to find a defendant guilty of attempted second-degree murder, the State must prove the specific intent to kill.  Here, he argues, the State failed to meet its burden of introducing evidence that he acted with the intent to kill Trooper Sullivan.  He further contends that the State's evidence failed to support the language used in the information.

¶ 12.    This Court reviews § 7553 decisions based on the record below, State v. Ford, 2015 VT 127, ¶ 8, 200 Vt. 650, 130 A.3d 862 (mem.), but "independently determines whether the standard has been met."  State v. Orost, 2017 VT 110, ¶ 5, 206 Vt. 657, 179 A.3d 763 (mem.).  Our review of the discretionary bail decision "is strictly limited to whether there was an abuse of discretion."  State v. Pellerin, 2010 VT 26, ¶ 13, 187 Vt. 482, 996 A.2d 204 (quotation omitted).  This discretion is broad, "but the bail decision cannot be arbitrary."  Ford, 2015 VT 127, ¶ 10.

¶ 13.    "An 'attempt' under Vermont law requires an intent to commit a crime, coupled with an act that, but for an interruption, would result in the completion of a crime."  State v. Sawyer, 2018 VT 43, ¶ 12, 207 Vt. 636, 187 A.3d 377 (mem.); see also 13 V.S.A. § 9(a) ("A person who attempts to commit an offense and does an act toward the commission thereof, but by reason of being interrupted or prevented fails in the execution of the same, shall be punished as herein provided unless other express provision is made by law for the punishment of the attempt.").  In other words, two elements are required for an attempt: "(1) intent to commit a certain crime; and (2) an overt act designed to carry out that intent."  State v. Devoid, 2010 VT 86, ¶ 10, 188 Vt. 445, 8 A.3d 1076 (quotation omitted).

¶ 14.    This Court has held that "to support a conviction of second-degree murder it is sufficient to prove an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm."  State v.

<u>Hatcher</u>, 167 Vt. 338, 344, 706 A.2d 429, 433 (1997) (quotation omitted); see also 13 V.S.A. § 2301 (establishing that all murder not committed "by means of poison, or by lying in wait, or by willful, deliberate, and premeditated killing, or [not] committed in perpetrating or attempting to perpetrate arson, sexual assault, aggravated sexual assault, kidnapping, robbery, or burglary" is murder in the second degree).

¶ 15.    Defendant argues that, in contrast to consummated second-degree murder, which may be proved not only by intent to kill but also by intent to do great bodily harm or "wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm," <u>Hatcher</u>, 167 Vt. at 344, 706 A.2d at 433, <u>attempted</u> second-degree murder compels the State to prove a specific intent to kill.  We do not address this argument under this bail-appeal procedural posture because, assuming without deciding that defendant is right, viewing the evidence in the light most favorable to the State, the State met its burden of introducing substantial, admissible evidence sufficient to convince a jury beyond a reasonable doubt that defendant acted with the intent to kill Trooper Sullivan.

¶ 16.    "Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence."  <u>State v. Cole</u>, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988); see also <u>State v. Johnson</u>, 2013 VT 116, ¶¶ 29-30, 195 Vt. 498, 90 A.3d 874 (holding that defendant's act of stabbing victim in throat and saying he would be back "to finish the job" provided evidence for jury to infer intent to kill).  Here, the State introduced evidence that defendant drove a shuttle bus rapidly toward Trooper Sullivan, forcing the trooper to run out of the way and causing Trooper Roland to discharge his weapon to stop defendant.  The State presented evidence that the bus came within about twelve feet of the trooper.  It also introduced defendant's recorded words to the 911 operator before defendant drove toward the trooper.  Defendant said, "First one that starts playing fucking games is going to be sorry," and, "They keep fucking around, somebody gonna get hurt."  After the shots were fired, defendant told the 911 operator, "Now, they're firing at me. . . . They will get run over for less than that."  A jury can reasonably infer from this evidence that defendant intended to kill Trooper Sullivan.  This evidence of intent and of the act of driving the bus towards the trooper is substantial, admissible evidence that can fairly and reasonably show defendant guilty of attempted second-degree murder beyond a reasonable doubt.

¶ 17.    Defendant's second argument is that the State did not introduce evidence supporting the information as written.  The information charges defendant as follows, "Reginald Book, in the County of Rutland, at West Haven on or about December 6, 2020, attempted to commit second degree murder by unlawfully driving his vehicle towards Trooper Sullivan who had fallen on the ground after threatening to drive into him, in violation of 13 V.S.A. 2301."  Defendant argues that the State did not introduce evidence that Trooper Sullivan fell to the ground or that defendant threatened to drive into him.  We disagree.

¶ 18.    Trooper Sullivan testified at the weight-of-the-evidence hearing that as the van was moving towards him and as he was repositioning the spike strip, he fell and lost his footing.  He later testified, "part of my body slipped and fell, touching the ground."  The dash-camera footage, moreover, shows Trooper Sullivan briefly slipping and making contact with the ground.  Looking at this evidence in the light most favorable to the State, there is substantial, admissible evidence that Trooper Sullivan fell.

¶ 19. The State also introduced substantial, admissible evidence from which a jury can find that defendant threatened to drive into Trooper Sullivan. "A threat is a communicated intent to inflict harm on person or property." Cole, 150 Vt. at 456, 554 A.2d at 255 (holding that act of grabbing flashlight from officer could be found to be threatening behavior done to communicate intent to harm because flashlight could be used as weapon). Here, as noted, the State introduced evidence that prior to the incident leading to the attempted murder charge, defendant moved the bus in the direction of the officers, which caused Trooper Sullivan to draw his weapon. Defendant later said, "If they keep fucking around, somebody gonna get hurt." Again, defendant's acts and words can lead to the reasonable inference that he threatened Trooper Sullivan. In sum, we agree with the trial court that the State introduced substantial, admissible evidence that, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt.[2]

¶ 20. Finally, we find no abuse of discretion in the superior court's discretionary bail decision. The court weighed the nature and circumstances of the offenses charged, recounting evidence of the incidents on December 4 and 6. The court considered the danger to the public defendant represented and his unwillingness to follow law enforcement orders. The court further weighed the testimony of defendant's friend, defendant's convictions of resisting arrest and simple assault, and the absence of prior failures to appear in court or bail violations. Considering the balance before it, the court declined to release defendant on bail or conditions. We find no abuse of discretion or arbitrary decision-making.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice[3]

Beth Robinson, Associate Justice

William D. Cohen, Associate Justice

---

[2] The State, of course, may amend the information as provided in Vermont Rule of Criminal Procedure 7(d).

[3] Chief Justice Reiber was not present for oral argument, but reviewed the briefs, listened to oral argument, and participated in this decision.